**STATE of Missouri, Respondent,**

**v.**

**Earl James HOLMES, Appellant.**

**No. 50824.**

Supreme Court of Missouri,

Division No. 1.

March 8, 1965.

Motion for Rehearing or for Transfer to Court En Banc Denied April 12, 1965.

Thomas F. Eagleton, Atty. Gen., Jefferson City, George D. Chopin, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Earl James Holmes, pro se.

HENLEY, Judge.

By an amended information defendant was charged with the crime of robbery in the first degree by means of a dangerous and deadly weapon, Sections 560.120 and 560.135, this information also charging him under the Habitual Criminal Act (Section 556.280) with nine prior felony convictions. (Statutory references are to RSMo 1959 and V.A.M.S.) A jury found him guilty as charged. Prior to submission and outside the hearing of the jury the court heard evidence and made findings that the defendant had been convicted of and sentenced and imprisoned for prior felonies. The punishment was assessed by the court and the defendant sentenced to eighteen years in the penitentiary. He appeals from that judgment and sentence, his motion for new trial being overruled.

Defendant was represented at the trial by counsel appointed by the court, but is not represented by counsel on appeal.

We find in the file a brief apparently prepared by defendant to which is attached his pro se motion to withdraw his brief. He prays further that the court consider his appeal as though he had not filed a brief as he says was done in State v. Bosler, Mo., 366 S.W.2d 369. No doubt he considers this procedure to be to his advantage in view of our rules. His motion is sustained and we consider his appeal as though no brief had been submitted by him. His rights are, however, fully protected, (if, in fact, he does not have an advantage

by this procedure) for under our rules, where no brief is filed by him this court is required to review the essential portions of the record and all assignments of error properly preserved in his motion for new trial, and we may also consider plain errors not raised in the motion for new trial. Rules 28.02 and 27.20 (references to rules are to Supreme Court Rules and V.A.M.R); State v. Reece, Mo., 324 S.W.2d 656.

His motion for new trial contains nine assignments of error. The first assignment is in excess of eight pages long, but condensed, it constitutes a contention that the court erred in (a) admitting evidence identifying, and the receipt by the police and their custody of, a double-barrelled sawed-off shotgun, and, (b) the admission of this shotgun in evidence. The remaining eight assignments are that the court erred: (1) In sustaining the state's objection to that portion of defendant's argument in which he sought to refer to the state's failure to offer evidence of fingerprints that might have been taken from articles touched inside the premises by the guilty party, (2) In admitting in evidence a picture alleged to be that of defendant, (3) In application of the Habitual Criminal Act, (4) In refusing instruction No. A offered by defendant on alibi, (5) In giving instruction No. 3 on the defense of alibi, (6) Because "the verdict was against the weight of the evidence", (7) In overruling his motion for judgment of acquittal at the close of the evidence, and, (8) Because he was denied due process and equal protection of the law in that he was held too long in jail and did not get a speedy trial.

The evidence adduced by the state would warrant a finding of the following facts: On the evening of July 8, 1963, Eugene H. Anderson and Mary Maney Bell, his employee, were at work in Anderson's donut shop known as Aza Donut Company located at 5618 Page Boulevard in the City of St. Louis. At about the hour of 11:25 P.M. defendant entered the shop, bought a popsicle from Mrs. Bell and left. About five minutes later defendant returned, this time carrying under his right arm a double-barrelled sawed-off shotgun covered by a green cloth. Anderson, then cutting donuts at a table, saw the defendant and his gun "out of the corner of his eye" and held his hands up above his head, as defendant "flipped" the cloth from the gun. At defendant's direction Anderson put his hands down, turned his back to defendant and continued his work. By this time defendant had walked behind a glass display case and to the cash register on a counter. He opened the cash register drawer by pressing one of the keys and took therefrom in excess of $40. Noticing that Mrs. Bell was watching him he told her to turn around and continue her work and then directed Anderson to come to him and turn his back toward him. Removing from Anderson's hip pocket a wallet containing $5 or $10 and some papers, he dropped only the papers to the floor and left the premises. The police were informed of the robbery and given a description of the defendant.

On the evening of July 19, 1963 a double-barrelled sawed-off shotgun was taken from defendant by one Emmett Williams and turned over to the police. This shotgun, marked State's exhibit 1, was identified by Anderson and Mrs. Bell at police headquarters and at the trial as being the gun defendant had at the donut shop the evening of July 8. It was received in evidence over defendant's objection. During a discussion between counsel and the court in the judge's chambers regarding the admissibility in evidence of this shotgun it was disclosed that defendant was charged with another felony (exhibiting a dangerous and deadly weapon in a rude, angry and threatening manner) growing out of an occurrence on July 19 when Williams took this gun from defendant. None of the facts of this occurrence, other than the mere fact of the taking of the gun from defendant, was heard by the jury.

Defendant was arrested on July 23 and that evening Anderson and Mrs. Bell identified him as the man who had robbed the donut shop on July 8. At that time, and on

the evening of the robbery, according to the description of these two witnesses, defendant had long hair "up in a page boy, like ladies wear their hair" and a goatee. A photograph, marked state's exhibit 2, apparently showing defendant as above described and with a mustache, was identified by these witnesses as being a fair representation of defendant on the date of the robbery and on the date they identified him at police headquarters. During the trial defendant was clean shaven with his hair cut short.

Defendant's evidence consisted of the testimony of two of his sisters and two of their sons. Their testimony was that defendant had arrived at their residence in St. Louis between eight and nine o'clock the evening of this robbery and that he remained there in their presence throughout that night and until July 10 when each of the two sisters lent him $1 from their respective ADC checks received that day. Defendant did not testify.

■ As to defendant's contention that the court erred in admitting the shotgun in evidence, in admitting evidence that the witness Williams took this gun from him eleven days after the robbery and gave it to the police, and erred in permitting identification of the gun by Anderson and Mrs. Bell, he says that this constituted proof of the commission of another separate and distinct crime of which he then stood charged and violated his right to be tried solely for the offense of first degree robbery.

"The well established general rule is that proof of the commission of separate and distinct crimes is not admissible, unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. * * * Evidence of other crimes, when not properly related to the cause on trial, violates defendant's right to be tried for the offense for which he is indicted." State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920, 922, 923. State v. Reese, 364 Mo. 1221, 274 S.W.2d

304, 307. One of the exceptions to this rule is that evidence of other crimes is competent to prove the specific crime charged when it tends to establish the identity of the person charged with the commission of the crime on trial. Apparently the purpose of evidence pertaining to the shotgun was to further prove identity of defendant. This court also said in State v. Reese, supra, 274 S.W.2d l. c. 307, that there are limitations on the above exception to the general rule and quoted this limitation from 20 Am.Jur., Evidence, Section 312:

" 'Generally speaking, it is only where the identity of the accused is not definitely connected with the offense on trial that other offenses may be introduced to connect and identify him with the case on trial. If the identity of the accused is established by other evidence and is therefore no longer an issue, it is improper to admit evidence of other crimes on the theory of proving identity. * * * *It is not proper to admit details of separate and distinct crimes for the purpose of showing identity.'* (Emphasis supplied.)"

The fallacy, however, in defendant's position or contention is that there is no evidence in this record of the details of another crime or, in fact, of another separate crime; the state's attorney, under the specific directions of the trial judge in chambers, being particularly careful before the jury not to elicit evidence of such other crime and its details. As a matter of fact, there was no evidence heard by this jury that defendant had ever been arrested, or taken in custody, or charged with any crime growing out of the incident of Williams taking the gun from him. The evidence was totally devoid of any facts as to where, why, or under what circumstances the gun was taken from him. The evidence objected to by defendant described in the first assignment of his motion for new trial was admissible and the court did not err in its rulings thereon.

In the second assignment of his motion for new trial defendant apparently contends that he was entitled to draw an unfavorable inference in argument from the fact that the state failed to take defendant's fingerprints from the articles he touched in the premises robbed and produce those fingerprints at the trial. There was evidence that defendant touched a key of the cash register and papers he removed from Anderson's hip pocket and no doubt he touched the closed screen door which he had to open in entering and leaving the premises. But there is no evidence fingerprints were taken by the police from those articles or from defendant's fingers for comparison. It was not incumbent upon the state to take defendant's fingerprints from the articles he touched or, if taken, to produce them in evidence. Nor is the state required to account for their absence. At most the fingerprints would have been merely cumulative evidence. Roehl v. Ralph, Mo.App., 84 S.W.2d 405, 413 [10]; State v. McMillian, Mo., 338 S.W.2d 838, 845 [8]; 23A C.J.S. Criminal Law § 1099, p. 179. This argument was no doubt intended to divert attention from the real issue. The court did not err in sustaining the state's objection to the argument.

Defendant's next assignment of error is in the admission in evidence of a picture identified at trial by Anderson and Mrs. Bell to be that of defendant. He contends that the "proper foundation was not laid as to who took the picture and when * * *." He also contends that the picture was hearsay evidence and, in that it was "self-incriminating" and "[deprived] him of due process of law", that it violated his constitutional rights. Mrs. Bell testified that defendant had long hair and a goatee at the time of the robbery, as well as at the time of her identification of him at police headquarters. At the police station he challenged identification of him, saying "they're crazy", and his defense was that he was not at the donut shop and therefore was not the person who committed the robbery. As stated, at the trial he was clean shaven with his hair cut short. Gladys Holmes, his sister, was handed this picture during cross-examination. She said the picture was an accurate representation of her brother.

The photograph was relevant and material on the question of the accuracy of his identification by the witnesses. State v. Childers, Mo., 313 S.W.2d 728, 731 [5]. The assignment is without merit and no error was committed in its admission.

The fourth assignment is that the court erred in applying the Habitual Criminal Act in that it failed to find the defendant had previously been convicted of an offense punishable by imprisonment in the penitentiary. We understand defendant's contention to be that although the court found defendant had been convicted of prior felonies and sentenced to imprisonment in the penitentiary (and imprisoned therefor) there was no specific finding these offenses were those "punishable by imprisonment in the penitentiary." There is no merit in the contention. The record shows that the court made nine separate findings for as many previous convictions (six for burglary in the second degree, one for carrying a concealed weapon, one for escape from the penitentiary, and one for larceny from the person of less than $30.). In each the offense was punishable by imprisonment in the penitentiary and in each of four (three for burglary, second degree, and one for escape from the penitentiary) the court found that defendant was sentenced to the penitentiary, and duly imprisoned therefor. This was equivalent to a finding that these offenses were "punishable by imprisonment in the penitentiary." The findings of the trial court complied with Section 556.280(2).

Assignment No. 5 is that "the Court erred in refusing to give instruction Number A offered by the defendant." This assignment is insufficient to preserve anything for review. Rule 27.20; State v. Burkhart, Mo., 242 S.W.2d 12, 14 [3].

His basic complaint in his next assignment is that instruction No. 3, on the defense of alibi, uses the word "alibi" and the use of that word, he says, is prejudicial to him. He does not point out wherein or how it prejudices him. An instruction identical to No. 3 was approved in State v. Knicker, Mo., 366 S.W.2d 400, 404 [8]. In State v. Griffin, Mo., 336 S.W.2d 364, 368 [9], the defendant contended that the use of the word "alibi" prejudiced him; the court held the point without merit and overruled it. We again so hold and rule.

Assignment No. 6 of his motion is "The verdict of the jury was against the weight of the evidence." The assignment is too general and preserves nothing for review. Rule 27.20; State v. Maxwell, Mo., 376 S.W.2d 170, 173 [4].

His assignment that "the Court erred in overruling the defendant's motion for judgment of acquittal at the close of the entire case" is completely refuted by the mere recital of the state's evidence.

The next, and last, assignment in his motion for new trial is that he was denied his constitutional right of a speedy trial (Section 18(a), Article I, Constitution of Missouri, V.A.M.S. and the Sixth Amendment to the Constitution of the United States), in that he was held without trial between July 23, 1963 and March 9, 1964. Section 545.890 providing that any person indicted and committed to prison not brought to trial before the end of the second term of court after the indictment shall be entitled to discharge, *unless the delay shall happen on the application of the prisoner,* etc., has been held to be an implementation of a defendant's constitutional right of a speedy trial. State v. Hicks, 353 Mo. 950, 185 S.W.2d 650, 651–652 [1, 2]. The record shows that on September 24, October 28, and November 26, 1963 this case was continued at the request of the defendant. On January 16, 1964 it was continued by consent of the parties, and on February 7 it was continued at the request

of the defendant to March 9, 1964, the day this trial began. Of these five continuances in less than eight months four were at his sole request and the fifth was by consent of both parties. We hold that his constitutional rights have not been violated, such denial of a speedy trial as there was being occasioned by his own act.

We find no prejudicial error in those parts of the record which we examine independently of a motion for new trial under Rule 28.02.

The judgment is affirmed.

All concur.