STATE of Missouri,
Plaintiff-Respondent,

v.

Edward SIMPSON, Defendant-Appellant.

No. 41601.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 20, 1981.

Robert C. Babione, Public Defender by John Keath, Asst. Public Defender, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen. by Nancy D. Kelley, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Judge.

Defendant, Edward Simpson, was convicted of possession of heroin in violation of §§ 195.017 and 195.020 RSMo 1969 and was sentenced to ten years imprisonment under the Second Offender Act, § 556.280 RSMo 1969. We affirm.

In the early afternoon of August, 1978, Detective Michael Benson and Officer Peter Gober of the St. Louis Police Department arrived at the 2700 block of North Spring in the City of St. Louis. The officers had been told by a confidential informant that a man known as "Skinny" was selling heroin in a vacant lot at that location. This informant had provided information to police on 4 or 5 previous occasions which had resulted in the issuance of search warrants and at least one conviction.

Upon arriving at North Spring, the officers parked in an alley facing east onto Spring Avenue. From this vantage point, they could see the vacant lot on the west side of Spring Avenue. A truck was parked at the north end of the vacant lot 75 to 100 yards from the officers' vehicle.

Using binoculars, the officers watched defendant for approximately 30 minutes. On three separate occasions during this 30-minute interval, the officers saw defendant approach an unknown male on Spring Avenue. Each time, what appeared to be paper money changed hands. The defendant would then walk to the truck, open the door on the driver's side, take off his hat and appear to do something with the hat. Defendant would then replace the hat on his head and return to the unknown male waiting on the street, where something would exchange hands. After approximately 30 minutes, a fourth man approached defendant. Defendant walked to the truck and repeated his earlier performance. The officers then drove their unmarked police car onto the lot. Defendant attempted to flee

but fell, because he was wearing braces and using crutches.

As defendant attempted to run from the officers, he threw a piece of white paper over the hood of the truck. The paper was retrieved by Officer Gober and was found to contain two pink gelatin capsules filled with a tan powder, which the officers believed to be heroin. Four similar pink capsules were discovered on the ground by the front fender of the truck. On the front seat of the truck, Officer Gober found an empty "Dormin" bottle, a black wallet containing no money, and a cap containing 51 pink capsules, each filled with tan powder. Defendant was then placed under arrest and advised of his "Miranda" rights. He was searched and an "Anacin" bottle containing pink capsules filled with a tan powder was found in his waistband.

Approximately 40 minutes later, defendant was again advised of his rights at the police station. He refused to make a written statement, but did make an oral statement, admitting that the seized heroin was his and that he had been selling heroin at that location since July, 1978, for Arnold Robinson.

At trial, Joseph Stevens, a criminalist who had analyzed the pink capsules, testified the tan powder was heroin. Stevens also testified that he did not conduct a test of the cap for hair samples nor did he dust the bottle or other items for fingerprints.

Defendant complains the trial court erred (1) in denying his Motions to Suppress Evidence and to Suppress Statements, (2) in failing to require the state to disclose the name of the police informant, (3) in restricting defense counsel's inquiry about the reliability of the police informant, (4) in restricting defense counsel's examination of the criminalist about hair samples and (5) in precluding defense counsel from arguing, in closing argument, that lack of fingerprint and hair sample evidence implied and indicated a police "frame-up" of defendant.

By his Motion to Suppress Evidence, defendant apparently sought to suppress the 4 pink capsules found on the ground, the two capsules wrapped in the white paper, the wallet, the "Dormin" bottle, the cap and the 51 pink capsules found in the cap. Defendant argues the trial court admitted this evidence by improperly construing the evidence to be the "fruit" of a lawful arrest. Defendant complains his arrest was unlawful because an adequate determination of the informant's reliability was not made and, therefore, defendant reasons, the information given to the officers by the informant was not sufficient to establish probable cause for defendant's arrest. Defendant's complaint is misdirected and, thus, misses the mark.

In the present case, the informant's reliability is irrelevant to the admissibility of the evidence in issue. Defendant discarded the two capsules found in the piece of white paper and in doing so he effectively abandoned them as well as any standing to complain of their seizure. *See, State v. Stavricos,* 506 S.W.2d 51, 57–58 (Mo.App. 1974). The four capsules on the ground, the "Dormin" bottle, the wallet and the cap containing 51 additional capsules were in plain view of the officers. No search was necessary to discover these items. " 'Observation of that which is open to view is not a search. A search . . . is not made by merely looking at that which can be seen.' " *State v. Rankin,* 477 S.W.2d 72, 75–76 (Mo. 1972). Thus, defendant cannot sensibly complain that these evidentiary items were the fruits of an illegal search. In addition, the seizure of the capsules of heroin from defendant's person was proper. The officers arrested defendant after they discovered the capsules on the ground and in the truck.[1] While it is true that an arrest without a warrant must stand upon firmer ground than mere suspicion, the existence of probable cause justifying a warrantless arrest is a pragmatic question resolved by the particular facts in issue and

---

1. Defendant does not argue there was a restriction of his freedom to move amounting to an

"arrest" prior to his being formally arrested.

their practical effect. *State v. Maxwell*, 502 S.W.2d 382, 386 (Mo.App. 1973). Here, among other facts, the officers saw defendant throw some paper containing capsules and found a cap used by defendant containing capsules. The officers believed all these capsules to contain heroin. The experience and training underpinning the officers' belief was not questioned. Hence, this evidence was sufficient probable cause to arrest defendant for possession of a controlled substance. The officers had the right to search defendant incident to this lawful arrest, *e. g., State v. Brasel*, 538 S.W.2d 325, 331–332 (Mo. banc 1976), *cert. denied*, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976) and, thus, the "Anacin" bottle containing the capsules of heroin was properly seized from defendant's waistband. Defendant's Motion to Suppress Evidence was properly denied.[2]

Defendant next complains that the trial court erred in denying his "request for disclosure of the police informant's identity ..., because sufficient evidence had not been introduced to support the conclusion that disclosure would not been relevant and helpful to appellant's cause or essential to a fair determination of his case". We disagree.

 Admittedly, disclosure of the name of a confidential informant is required in instances where such disclosure is relevant to the defense of the accused, essential to a fair disposition of the case, necessary to avoid the risk of false testimony or vital to secure useful testimony. *Roviaro v. U.S.*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–628, 1 L.Ed.2d 639 (1957); *State v. Hanson*, 587 S.W.2d 895, 903 (Mo.App. 1979); *State v. Edwards*, 317 S.W.2d 441, 446 (Mo. banc 1958). Whether a defendant can have a fair trial "without compelling disclosure of an informant's identity is a matter addressed to the sound discretion of the trial court". *State v. Hanson, supra* at 903. Our courts have distinguished between participant informants, that is, those who are "active in introducing police officers to the suspect or in setting up the criminal act and simple informants who merely provide information. The likelihood that fundamental fairness will require the disclosure of the identity of the latter group is substantially less." *State v. McCann*, 543 S.W.2d 504, 507 (Mo.App. 1976). In the present case, the informant merely provided information and was neither a participant in nor a witness to the crime. His testimony would not have shed effective light on the issue of defendant's guilt or innocence.

 Disclosure of the informant's identity may also be required where the informant's information is relevant to the issue of probable cause for arrest. *State v. Hanson, supra* at 903. Here, however, defendant committed an offense in the presence of the officers and, thus, the officers had probable cause to arrest defendant, regardless of any information given them by the informant. Since disclosure of the informant's identity was not demonstrably relevant to either the issue of guilt or probable cause for arrest, the failure to require the disclosure of his identity was not error.

 Defendant also argues the trial court erred in restricting defense counsel's examination of Officer Gober. Counsel's questions were an attempt to learn specific matters related to the reliability of the informant. Since the informant's reliability has not been shown to be relevant to the issue of probable cause nor to any other essential issue in this cause, there was no error committed by the trial court in limiting defense counsel's cross-examination of the officer.

Defendant's next complaint is neither explicit nor clear. Defendant complains the cross-examination of the criminalist Stevens about hair samples was unduly restricted. During cross-examination, Stevens was asked if he had tested the cap in evidence for hair samples. Stevens replied

---

2. Defendant does not state why the trial court erred in denying his Motion to Suppress Statements nor does he mention this alleged error in the argument portion of his brief. Therefore, this complaint is not preserved for our review. *Haase v. Richmond*, 570 S.W.2d 341, 344 (Mo. App. 1978); *State v. Boley*, 565 S.W.2d 828, 831 (Mo.App. 1978).

he had not. He was then asked: "If a hair sample had been found, could it have been matched to a particular person?" The court sustained the state's objection to the question on the grounds that it called for irrelevant and immaterial testimony. Apparently, defendant contends that Stevens' answer would be relevant to the issue of defendant's ownership or use of the cap containing heroin capsules. We disagree.

First, the trial court has broad discretion in determining the scope of cross-examination. *State v. Thomas*, 552 S.W.2d 63 (Mo.App. 1977). Moreover, here, Stevens testified he did not make an analysis of any hair sample taken from the cap in issue. Therefore, his answer to the question of whether hair samples can be matched would not be relevant to defendant's use or ownership of the cap, regardless of his answer. Thus, the trial court did not abuse its discretion in sustaining the state's objection to defendant's answer.

Finally, defendant argues it was error to preclude his counsel from arguing to the jury that the lack of fingerprint and hair sample evidence implied or indicated the police framed defendant and, therefore, defendant was innocent. One of defendant's defenses or explanations, argued to the jury, was that the police officers happened upon a drug transaction, the real culprit or culprits scattered before the officers' approach, preventing their capture by the officers, and the officers then arrested defendant even though he was innocent, simply because his disability prevented him from leaving the scene, making him easy prey for the officers. Since there was testimony that none of the seized articles were dusted for fingerprints and that no hair sample test was conducted on the cap, defense counsel, in chambers, stated he wanted to argue this failure of the police to dust for prints or to match hair samples as explicit support of his theory of a police frame-up and defendant's innocence. On the state's motion, the court precluded defense counsel from making this explicit argument. Defendant claims this ruling was error. We disagree.

The state is not obligated to attempt to take fingerprints from articles allegedly touched by a defendant, *e. g., State v. Holmes*, 389 S.W.2d 30, 34 (Mo. 1965), nor is it incumbent on the state to account for the absence of fingerprint evidence. *Id.* at 34. Thus, in closing argument, an adverse inference may not be drawn from the state's failure to take fingerprints. *E.g., State v. Terry*, 472 S.W.2d 426, 430 (Mo. banc 1971); *State v. Holmes, supra* at 34. This reasoning is applicable here. The state does bear the burden of presenting sufficient evidence to make a submissible case. However, the state is not bound to gather and present all physical evidence conceivably germane to its case in chief. More precisely, as noted, the state is not required to account for its failure to gather or present such evidence. *State v. Terry, supra; State v. Holmes, supra.* Thus, in the present case, the refusal of the trial court to permit defense counsel to draw the adverse inference in question was consistent with prior case law and logic.

Judgment affirmed.

SMITH, P.J., and SIMON, J., concur.