STATE of Missouri, Respondent,

v.

Ladon McCULLEY, Appellant.

Nos. 54008, 56266.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 28, 1989.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Jan. 3, 1990.

Application to Transfer Denied
Feb. 13, 1990.

---

Scott E. Walter, Clayton, David C. Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

SMITH, Judge.

Defendant was convicted by a jury of second degree felony murder, first degree arson, and first degree robbery. He was sentenced to life imprisonment on the murder and robbery convictions and to thirty years imprisonment on the arson charge, all sentences to run consecutively. He was sentenced as a Class X offender. Post-trial the defendant filed a motion pursuant to Rule 29.15 which was denied without evidentiary hearing. He appeals from his convictions and from denial of his post-conviction motion.

This is a companion case to *State v. Russell*, 780 S.W.2d 126 (Mo.App.1989). However, the facts of participation by the respective defendants are not the same. Russell made statements to the police concerning his involvement in the offenses which were used against him at his trial. No such statements were made by defendant here and the case against this defendant was purely circumstantial. No challenge is raised to the sufficiency of the evidence to support the conviction. Defendant, Robert Loggins and Terry Russell participated in a robbery of Charles Petkovich in his residence on August 12, 1986. During the course of that robbery Petkovich was beaten with a bottle and cut on the face. He was shot four times in the neck and head at close range. While Petkovich was still alive but probably unconscious, the robbers poured an accelerant throughout the house, including on Petkovich and started a series of fires. These

burned intensely. Petkovich died of smoke inhalation.

Considerable property and money belonging to Petkovich was taken in the robbery and two Cadillac automobiles belonging to Petkovich were also taken. The automobiles were found by police abandoned in the Peabody Housing Project. In one a footprint was found on the floor mat. The footprint was "compatible with" a shoe seized from defendant at the time of his initial arrest. Some of the property stolen from Petkovich's home was found at the residence of defendant's girl friend Sharon Wright. Wright testified it was brought there by defendant. Additional property was found at the nearby residence of a friend of Wright's who testified it was brought there by defendant.

■ Defendant's initial challenge is to the failure of the trial court to suppress the shoe taken from the defendant and a comparison chart used in connection therewith. This challenge is upon the basis that the initial warrantless arrest of defendant, at which time the shoe was seized, was made without probable cause. Some history of the arrest is required.

Very shortly after the discovery that Petkovich had been shot and robbed, police located the two missing vehicles in the Peabody Housing Project. Officer James of the St. Louis Police Department contacted a confidential informant living in or near the project. The informant had a previous conviction for murder but had been utilized by James over a six year period in numerous investigations. His information had consistently proved to be reliable. On the day of the murder, James requested the informant to obtain whatever information he could on the participants in the Petkovich murder. The next day the informant advised James that a person he knew as "Nate" was involved in the killing. Defendant is known as "Nate" or "Nay." The informant stated the last name was like "McGillicuty." James was unable to locate any person with that name. On August 14 the informant was advised of the lack of success in identifying the suspect. The informant then stated that he believed

Nate had a father named Rufus who lived on Rutger and gave James a telephone number for Rufus. James was able to identify the telephone number as belonging to Bessie McCulley at 2727 Rutger. Rufus and Bessie McCulley are defendant's parents. James advised the informant that the number belonged to Bessie McCulley, to which the informant responded "Okay, that's it, it's not McGillicuty." James told the informant they had not been able to verify a prior arrest record for Nate or Nathaniel McCulley. The informant advised that the suspect had "just recently been released from the penitentiary." Defendant had been released from prison in April 1986.

On August 15 the informant advised James that Nate had some property taken in a robbery or burglary and the items were kept at the residence of a girl friend in the Peabody Housing Project. Upon checking at the Rutger address, James was able to determine that the girl friend was Sharon Wright. James was able to obtain an address for Sharon Wright from a directory of residents in Peabody. He then obtained a telephone number for Wright from the informant and verified through the telephone company that that number was issued to Sharon Wright at the address James had determined. At some point prior to the arrest, James showed the informant a picture of McCulley which the informant identified as Nate.

On August 18 James and two other officers went to Wright's residence. After considerable discussion and some delay, Wright consented to allow a search of her residence. Defendant was present in the residence when the police arrived. The officers characterized the search as thorough but it did not involve looking into places where small items, such as foreign coins taken in the robbery, might be concealed. The police looked rather for large items such as television sets and VCRs. Nothing stolen in the robbery was discovered during the search. Defendant was arrested and taken to police headquarters where he was questioned. He gave an alibi. The tennis shoes he was wearing were confis-

cated. He was released upon the determination that the police lacked enough evidence to charge him. When his alibi did not check out he was arrested again the next day. The police obtained a statement from Wright implicating defendant and upon a new search of her residence, with her assistance, contraband including a gun and coins was found. Defendant was then charged.

An arrest is valid where there is probable cause to believe the arrestee has committed an offense. *State v. Riley*, 704 S.W.2d 691 (Mo.App.1986)[1]. Probable cause exists where police have knowledge of facts and circumstances, of which they have reasonably trustworthy information, sufficient to warrant a belief by a person of reasonable caution that the person to be arrested has committed the crime for which he is being arrested. *State v. Giffen*, 640 S.W.2d 128 (Mo.1982)[7]. Evidence obtained from an arrest lacking probable cause is to be excluded from trial as the "fruit" of the illegal arrest. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The quantum of evidence required to find probable cause need not be enough to convict but must be more than mere suspicion of criminal activity. *State v. Gant*, 490 S.W.2d 46 (Mo.1973)[2–5]. In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the court recognized that informant tips could provide probable cause for search warrants and arrests. The sufficiency of the information to support probable cause must be examined on a totality of the circumstances basis. In *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975)[12] the court stated:

"The true inquiry therefore is whether the informant's present information is reliable. As long as the corroboration of the information through other sources, even though the matters are innocuous, reduces the chances of a "reckless or prevaricating tale," the information, even though hearsay, may form the basis of probable cause for an arrest."

The informant in this case was one who had established reliability over a period of years. He was a resident of the area in which the Cadillacs were abandoned, and it is a reasonable inference that that area, near the crime scene, would constitute a home base for the perpetrators of the crimes. The information he provided came out in bits and pieces not as one immediate report. It is a reasonable inference that it represented a continuing investigation by the informant over a period of several days. Such continuing supplying of updated information does not bespeak a "reckless or prevaricating tale." The name initially given to James correctly utilized defendant's nickname and a last name at least arguably close to defendant's last name. There was testimony that it is not uncommon for persons in a neighborhood to be aware only of the first name of a resident or a frequent visitor. Prior to the arrest James had the informant identify a picture of defendant as "Nate" to insure that the informant and James were identifying the same person. The informant was aware of defendant's recent release from prison. He properly identified defendant's parents and their location. He was aware of the approximate location of the defendant's girl friend, with whom defendant stayed frequently, and had obtained her telephone number. The girl friend lived in close proximity to where the automobiles were found after the crime. When James went to Wright's apartment to conduct the search, defendant was in the apartment. Wright expressed considerable reluctance to permit the search before finally consenting thereto. Under the totality of the circumstances there was sufficient reliability to the informant's information to justify James' belief that defendant had committed the crime for which he was arrested. The shoes seized at the time of the arrest were properly admitted into evidence.

■ Defendant next contends that the trial court erred in refusing to require the disclosure of the informant's name. The question to be resolved is whether the defendant can have a fair trial without compelling disclosure of the informant's identity and that is an issue addressed to the sound discretion of the trial court. *State v. Hanson*, 587 S.W.2d 895 (Mo.App.1979)

[14, 15]. Where the issue is probable cause for arrest, the general rule is that the identity of the informant need not be disclosed if the trial judge is convinced by evidence submitted in open court and subject to cross-examination, that the police did rely in good faith upon credible information supplied by a reliable informant. *Id.*

Disclosure has been required where such disclosure is relevant to the defense of the accused, essential to a fair disposition of the case, necessary to avoid risk of false testimony or vital to secure useful testimony. *State v. Simpson*, 611 S.W.2d 556 (Mo.App.1981) [7, 8]. Disclosure of an informant who "merely provided information" is not essential to fundamental fairness. *Id.* [8]. We do not perceive, nor has defendant advised us, why the disclosure of the identity of the informant was necessary to either the motion to suppress or the defense of the case. The police officer who made the arrest testified to the basis for the arrest and his good faith belief that defendant had committed the crime. We find no error in the trial court's ruling.

■ Defendant next complains of the trial court's action in excusing a venireman for cause after the venireman stated he had been convicted of a crime and been put on probation. Secs. 561.026 and 494.020 RSMo 1986 disqualify a person convicted of any felony from ever serving as a juror. The latter section also disqualifies those convicted of a misdemeanor involving moral turpitude. A "crime" encompasses more than those two categories. No inquiry was made by either the state or the defendant to further identify the crime involved. We have continuously urged trial courts to err on the side of caution in ruling on challenges for cause because failure to strike for cause an ineligible juror is reversible error. *State v. Wolff*, 701 S.W.2d 777 (Mo. App.1985)[1–3]. Defendant failed to establish that the venireman was not disqualified and we cannot premise error on the trial court's action in excusing the venireman. On the record before us we have no basis for concluding that the venireman was an eligible juror.

■ Defendant also posits a challenge to the prosecution's utilization of its peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The prosecution utilized six of nine peremptory challenges against black veniremen. The jury contained either seven or eight blacks. There is no fact or circumstance shown in the record, other than the number of challenges made, to raise an inference that the state used its peremptory challenges to exclude veniremen because of their race. Because this case was tried prior to *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987) we need not even examine the reasons given by the prosecution to explain the strikes made. *State v. Griffin*, 756 S.W.2d 475 (Mo. banc 1988)[2]. In any event those explanations were race-neutral. The fact that the prosecutor did not utilize all her challenges to remove members of defendant's race undercuts any inference of impermissible discrimination. *Id.* The defendant did not establish a prima facie case under *Batson*.

Defendant makes two challenges to the closing argument of the prosecution, one on a plain error basis. We have reviewed the argument and find no abuse of the court's broad discretion. *State v. Stuckey*, 680 S.W.2d 931 (Mo. banc 1984) [7–10].

Defendant's appeal of the denial of his 29.15 motion is based upon the failure of his attorney to rebut the prosecutor's explanations of her peremptory strikes. We have already held that defendant did not make a *prima facie* case of racial utilization of peremptory strikes by the prosecutor. There was no necessity for explanations to be given by the prosecutor and there can be neither ineffectiveness nor prejudice to defendant in failing to rebut an irrelevancy.

Defendant's final point is that he was improperly sentenced as a Class X offender. The convictions were for offenses which occurred prior to the effective date of the Class X statute. *State v. Lawhorn*, 762 S.W.2d 820 (Mo. banc 1988)[5] held that Sec. 558.019 cannot be applied to a defendant convicted of a crime committed before

the effective date. The state so concedes, and we must remand for re-sentencing.

Convictions affirmed, denial of motion for post-conviction relief affirmed, and cause remanded for re-sentencing.

SATZ, P.J., and GRIMM, J., concur.