STATE of Missouri, Plaintiff–Respondent,

v.

William Eugene TAYLOR, Defendant–Appellant.

No. 23838.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 11, 2001.

Dee Wampler, Thomas D. Carver, Springfield, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, for Respondent.

JOHN E. PARRISH, Judge.

William Eugene Taylor (defendant) was convicted, following a jury trial, of involuntary manslaughter. § 565.024.1, RSMo 1994. A vehicle defendant was driving collided with another vehicle driven by Roy Groh. Mr. Groh died as a result of injuries sustained in the accident. This court affirms.

On the evening of October 8, 1997, defendant was at home on Pythian Street in Springfield, Missouri. Defendant resided in a part of a large building sometimes referred to as the Pythian castle. The building is located near a college campus and a city park. It is a multi-story, 30,000 square feet building. Defendant thought shots were being fired into his home. He believed the shots came from a van he saw when he looked outside.[1] He ran outside, got into a truck and pursued the van.

Defendant followed the van southbound on Glenstone. He drove "just about in the middle lane" to prevent hitting anyone who might drive onto the street "on either side." As the van approached the intersection of Glenstone and Chestnut Expressway, the traffic signal for southbound traffic on Glenstone changed to yellow.

---

1. There was evidence that a pellet gun had been fired toward the building; that the participants in the gun-firing incident believed the building was vacant; that a light came on inside the building and they fled. They were traveling in a van.

Defendant was following "probably four, five car lengths" behind. According to an eyewitness, by the time the van went through the intersection, the traffic signal was red.[2] Defendant followed the van into the intersection. Mr. Groh's car was proceeding eastward into the intersection as defendant's truck entered the intersection. Defendant's truck struck the car broadside.

Jason Claxton saw the accident. He described what he saw:

> The truck was right here. The light was red, he knew it was red, he started coming over, drifting, and went over one lane, over into the turn lane, even went over into the oncoming lane. He struck the car broadside in the driver door and pushed him up into the parking lot, and the car ended up somewhere in the Commerce Bank parking lot, and the gentleman was no longer in the driver's seat, he was pushed all the way over into the passenger's seat and the truck was somewhere left along the embankment. There's an embankment there and it had to go up the embankment, so he hit him at a pretty high rate of speed.

Mr. Claxton saw defendant get out of his truck after the accident. He heard defendant say "he was chasing the van, they had shot at his house."

Defendant presents two points on appeal. Point I complains of error in not allowing evidence of "[defendant's] reputation for peace, quietude and good order as rebuttal evidence to the state's evidence that [defendant] was a quarrelsome, turbulent and dangerous man."

Defendant called Carman Jones as a witness. Mr. Jones said he knew defendant. He was asked, "Are you—your contact with other people in the community in which you live or in which you work, have you contacted or been in contact with other people that know of [defendant]?" He answered, "I do." Mr. Jones was then asked, "Are you acquainted with the reputation for violence and turbulence—," at which time the state objected on the basis that the question was irrelevant. The objection was sustained. Defendant's attorney was permitted to ask Mr. Jones if he was acquainted with defendant's reputation for peacefulness and honesty and "his reputation to tell the truth." Mr. Jones answered that he was familiar with that reputation; that it was excellent.

Defendant's questions to Mr. Jones came after the state presented evidence that defendant told police officials if he had caught the people in the van, he would have killed them. There was testimony that defendant had asked what would happen if he hunted down the occupants of the van and killed them. There was also evidence that a nine-millimeter semiautomatic rifle with an ammunition box and two ammunition magazines were found behind the driver's seat of defendant's truck. Defendant argues that this was evidence of bad conduct; that he was entitled to rebut it with character evidence that he was not a violent and turbulent person.

Defendant called other character witnesses. He was permitted to inquire about their knowledge of his reputation for truthfulness and honesty, but was not permitted to inquire about "[defendant's] reputation for peace, quietude and good order." Point I contends it was error to not allow character witnesses to testify about defendant's "reputation for peace, quietude and good order."

---

**2.** Another witness, a passenger in the van defendant was chasing, testified she believed the traffic light turned yellow as the van entered the white line on the pavement that marked the beginning of the intersection.

The charge for which defendant was on trial was involuntary manslaughter. In order to commit involuntary manslaughter, defendant had to recklessly cause the death of another person. § 565.024.1(1), RSMo 1994. The jury was instructed that a person recklessly causes the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and that such disregard is a gross deviation from what a reasonable person would do.

Defendant's complaint that he should have been permitted to present evidence of his reputation for peace, quietude and good order is two-fold. He argues that, as a defendant in a criminal case, he was entitled to present such evidence. He argues further that evidence that he made statements about his desire to do violence to the occupants of the van and the presence of a weapon in his van was evidence of bad conduct; that he should have been permitted to refute that evidence with evidence of his good character.

■ "A defendant is generally entitled to present evidence of his reputation concerning those traits of character which ordinarily would be involved in the commission of the charged offense." *State v. Martinelli*, 972 S.W.2d 424, 434 (Mo.App. 1998). Defendant's criminal charge accused him of reckless conduct that caused the death of another person. The character evidence he sought to introduce did not go to character traits that necessarily demonstrate an unlikeliness that defendant would engage in recklessness. The trial court concluded the character evidence was irrelevant to the crime of involuntary manslaughter. Substantial deference is given a trial court's decision on admissibili-ty of evidence. *Id.* That decision will not be disturbed on appeal absent a showing of abuse of discretion. *Id.* This court finds no abuse of discretion by the trial court.

■ Defendant's second argument likewise fails. He complains that the character evidence he sought to present would have refuted the state's evidence that he made threatening statements concerning the occupants of the van he chased and evidence that he had a weapon and ammunition in the van. Neither the presence of the weapon nor the substance of the statements defendant allegedly made related to any element of the offense charged. The alleged statements were not directed to the person who was killed in the accident. Furthermore, defendant testified. He denied making statements that he wanted to harm the occupants of the van. He also offered an explanation for the presence of the weapon and ammunition that were in his truck.[3] Character evidence that defendant was a truthful person was admitted. Under the facts of this case, it was not error for the trial court to refuse to permit evidence of defendant's reputation for peace, quietude and good order. Point I is denied.

■ Point II contends the trial court erred in not allowing defendant's attorney to cross-examine two of the state's witnesses "about tests or experiments they had not performed during their investigation." Defendant attempted to question police officer Henry Gibson, an accident reconstructionist, about whether he checked the timing of the light signal at the intersection where the accident occurred. Defendant attempted to question police officer Darren Whisnant about whether he preserved items of evidence

---

3. Defendant testified he bought the gun at a gun show; that it did not work properly. He stated he had it in the van to take it back to the person he bought it from "to find out why it didn't shoot right."

from defendant's house and whether his training recommended always recording a suspect's statement.

The issues to which Point II is directed were not preserved for appellate review in that they were not included in defendant's motion for new trial. *See* Rule 29.11(d). Defendant seeks plain error review as permitted by Rule 30.20.

 Although the state is responsible for presenting sufficient evidence to make a submissible case, it is not bound to gather and present all physical evidence conceivably germane to a particular case. *State v. Simpson,* 611 S.W.2d 556, 560 (Mo.App.1981). The state is not required to account for all evidence it might have been able to obtain. *State v. Cooper,* 719 S.W.2d 20, 23 (Mo.App.1986); *State v. Simpson, supra.* This court declines the plain error review defendant seeks. Point II is denied. The judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.