**STATE of Missouri, Respondent,**

v.

**Randall G. EVANS, Appellant.**

**No. WD 75621.**

Missouri Court of Appeals,
Western District.

Aug. 27, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 2013.

Chris Koster, Attorney General, Jessica P. Meredith, Assistant Attorney General, Jefferson City, MO, for Respondent.

Janet Wake Larison, Grant City, MO, for Appellant.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, and KAREN KING MITCHELL and GARY D. WITT, Judges.

KAREN KING MITCHELL, Judge.

Randall Gene Evans appeals, following a jury trial, his four convictions pursuant to section 571.070 [1] for unlawful possession of a firearm, for which he was sentenced to four concurrent seven-year terms of imprisonment. On appeal, Evans challenges the sufficiency of the evidence to support his convictions, the trial court's exclusion of any evidence or argument about the State's failure to obtain fingerprint evidence, and several allegedly improper remarks made by the State during closing argument. Because the evidence was sufficient and there was no error in either the exclusion of evidence or the State's remarks during closing argument, Evans's convictions and sentences are affirmed.

**Factual Background**

On October 1, 1976, Evans pled guilty in Union County, Iowa, to one count of breaking and entering, and he was later sentenced to up to ten years in the Iowa Men's Reformatory. The court suspended execution of Evans's sentence and placed him on probation. Evans successfully completed probation two years later and received a Restoration of Citizenship from the Governor of Iowa. Within the Restoration, the Governor restored Evans "to all the rights, privileges and immunities which were forfeited by reason of said conviction." The Restoration further indicated that it was not to "be construed as a Pardon or as a remission of guilt or forgiveness of the offense."

In 1993, Evans married Denise Firth, and together, they owned a farm located at 44523 90th Street, Stanberry, Missouri. During their marriage, Evans frequently asked Firth, as well as other family members, to purchase guns for him in their names because he knew that, as a convicted felon, he was not allowed to do so in his own name. In 2009, Firth filed for divorce and moved out. A dissolution decree was entered on July 28, 2011, and in the property division section, the decree identified numerous firearms and ammunition in Evans's possession that were to be transferred from Evans to Firth.

Sometime in early May 2011, Kathy Libby stopped by Evans's farm to have coffee and smoke marijuana with Evans. That afternoon or evening, Libby witnessed Evans obtain an unidentified handgun from his bedroom and then fire it in his kitchen. On May 24, 2011, a Highway Patrolman went to Evans's home to investigate an unrelated incident and observed numerous spent shell casings on Evans's front porch. Libby stayed with Evans as a guest in his home until July 12, 2011.

In the morning, on July 12th, Evans's mother picked him up to take him to court for a hearing on the dissolution. Libby was at the farmhouse at that time, and she left shortly after Evans and his mother. When Evans arrived at the courthouse, he was arrested on an unrelated matter,[2] and law enforcement officers obtained a warrant to search Evans's home.

---

1. All statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2010 Cumulative Supplement, unless otherwise noted.

2. Though not presented in evidence to the jury, the record reflects that the discharge of the firearm in Evans's kitchen in May, 2011, involved Evans firing a handgun at an acquaintance named Daniel Wolf. It appears that the investigation on May 24, 2011, and Evans's arrest on July 12, 2011, were both in connection with the shooting of Daniel Wolf.

The search warrant was executed the following day, July 13, 2011, and, at that time, no one (apart from the searching officers) was present on the property. During a search of the kitchen, officers located a zipped-shut, green duffel bag, containing four loaded handguns (a Heritage .32 caliber pistol, a Taurus .22 magnum revolver, a Charles Daly semiautomatic .45 caliber pistol, and a Colt Buntline .22 caliber pistol) and over 500 rounds of live ammunition. Over 300 rounds of live ammunition were also found in the kitchen area. At least one of the four handguns was registered to Firth, who had not been in the home since November 2009.

Evans was subsequently charged with four counts of unlawful possession of a firearm. At trial, Evans testified that he did not remember seeing a green duffel bag in his kitchen when he left his house on July 12th, and he denied possessing any of the firearms contained within it. Despite testifying on cross-examination that he did not recognize any of the firearms found in the duffel bag, Evans had previously indicated on direct examination that he knew Firth owned one of the same firearms and that the last time he had seen any of them was in 2009. Evans also admitted having firearm deer-hunting permits from 1995 through 2009 and hunting with a .50 caliber black-powder rifle.

During closing argument, over Evans's objection, the State mentioned an ongoing national debate about gun-control laws, prompted by a notorious Colorado shooting that occurred the week before, and suggested to the jury that "no matter where you stand on that particular issue," the law in the State of Missouri precluded felons from possessing firearms, and that law needed to be enforced. The State also suggested that Evans possessed the firearms at issue and that he had loaded and packed them in the duffel bag for a quick getaway if need be.

The jury found Evans guilty on all four counts, and the court sentenced him—as a prior felony offender—to four concurrent seven-year terms of imprisonment. Evans appeals.

## Sufficiency of the Evidence

In his first and third points, Evans argues that the evidence was insufficient to support his convictions. More specifically, Evans first argues that, because Libby was present as a guest in his home, she had joint control of the premises, and the State failed to present sufficient additional factors tying possession of the firearms to Evans. Evans's second argument is that the State failed to present sufficient evidence to establish that Evans knew his possession of the firearms was unlawful.

### A. Standard of Review

Appellate review of challenges to the sufficiency of the evidence " 'is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' " *State v. Hougardy*, 396 S.W.3d 443, 446 (Mo. App. W.D.2013) (quoting *State v. Woods*, 284 S.W.3d 630, 638–39 (Mo.App. W.D. 2009)). " 'In applying this standard, the Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary.' " *Id.* at 446–47 (quoting *Woods*, 284 S.W.3d at 639). " '[T]he relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* at 447 (quoting *Woods*, 284 S.W.3d at 639).

**B. The evidence was sufficient to support Evans's convictions.**

Evans was charged with four counts of unlawful possession of a firearm. "A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and . . . has been convicted . . . of a crime under the laws of any state . . . which, if committed within this state, would be a felony. . . ." § 571.070.1(1). Evans raises two challenges to the sufficiency of the evidence.

**1. The evidence was sufficient to support the element of possession.**

■ In his first point on appeal, Evans argues that the State's evidence was insufficient to prove that he possessed the firearms at issue in light of the facts that (1) he was not present when the firearms were discovered, and (2) the home where the firearms were found was jointly controlled by both Evans and Libby, and the State failed to present sufficient additional factors tying the firearms to Evans.

According to section 556.061(22),[3] to possess "means having actual or constructive possession of an object with knowledge of its presence." A person can have either actual possession, meaning that "the object [is] on his or her person or within easy reach and convenient control," or constructive possession, meaning that the "person has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons." *Id.* "Possession may also be sole or joint." *Id.*

Here, Evans was located in the county jail when the firearms were discovered in his home; thus, he did not have actual possession because they were not "within easy reach and convenient control." *Id.* Consequently, the State had to present sufficient evidence to establish that Evans constructively possessed the firearms. *See State v. Roggenbuck*, 387 S.W.3d 376, 382 (Mo. banc 2012). "To prove constructive possession, the [S]tate had to show, at a minimum, that [the defendant] had access to and control over the area where the [contraband] was found." *Id.* "In possession cases, when there is joint control over premises, 'evidence of additional incriminating circumstances' that imply knowledge may be required." *Id.* (quoting *State v. Warren*, 304 S.W.3d 796, 800 (Mo.App. W.D.2010)).

The State argues that this is not a joint-control case because the home belonged to Evans only and there was no evidence indicating that anyone other than Evans

---

**3.** Section 556.061 is titled, "Code Definitions," and lists a series of definitions to be applied "[i]n this code." The "Criminal Code" to which the statute refers was passed as Senate Bill No. 60 in 1977 and became effective in 1979. *State v. Durley*, 603 S.W.2d 72, 73 (Mo.App. S.D.1980). Code offenses include only those offenses identified in Senate Bill No. 60; all other offenses pre- and post-dating the bill are considered offenses outside the code, even if they are numbered in such a manner as to place them among code offenses. *Id.* Section 571.070 was first adopted in 1981 and, therefore, is an offense outside the code. Thus, it is not clear that the definition of "possess" found in section 556.061(22) applies to section 571.070. Nevertheless, other courts have used this definition when analyzing a challenge to the sufficiency of the evidence supporting possession under sections 571.070 (unlawful possession of a weapon) and 573.037 (possession of child pornography), both of which are offenses outside the code. *See, e.g., State v. Ludemann*, 386 S.W.3d 882, 886 (Mo.App. S.D.2012); *State v. Roggenbuck*, 387 S.W.3d 376, 382 (Mo. banc 2012). Furthermore, MAI–CR 3d 331.28—the verdict director for unlawful possession of a firearm—uses the definition of "possessed" found in § 556.061(22). Thus, we will use this definition as well.

possessed the home.[4] The State's argument, however, ignores the undisputed evidence that Libby was an overnight guest in the home from early May 2011 until July 12, 2011. Although Libby was not the owner of the home, the record indicates that she was at least a temporary resident and had access to areas of the home—which presumably included the kitchen—up to and on the charged date of the offenses.

■ Thus, this is a joint-control case and, as such, the State was required to present sufficient evidence of additional incriminating circumstances to support Evans's knowledge of and control over the firearms.

> Additional incriminating circumstances that will support an inference of knowledge and control in a joint-control case include: the defendant's easy accessibility or routine access to the items; the defendant's close proximity to the items; finding defendant's personal belongings with the items; defendant's close proximity to the items in plain view of the police; ... admissions by the defendant; and conduct by defendant indicating a consciousness of guilt such as making false statements in an attempt to deceive the police, nervousness during the search, and flight from law enforcement.

*State v. Morgan*, 366 S.W.3d 565, 576–77 (Mo.App. E.D.2012). In evaluating "whether the evidence of additional incriminating circumstances sufficiently supports an inference of knowledge and control," we look to the totality of the circumstances. *Id.* at 577.

Here, as the homeowner, Evans clearly had easy and routine access to the kitchen where the firearms were found. And, though he denied during cross-examination recognizing the weapons, he had earlier indicated that he knew one of them was owned by Firth, his ex-wife, and that he had last seen the weapons sometime in 2009, which was well before Libby (the only other person who potentially had access to the firearms) became a guest in his home. The jury could have accepted his testimony that he had knowledge of the particular firearms and rejected his contrary testimony indicating that he did not recognize them. *State v. Hobbs*, 106 S.W.3d 498, 509 (Mo.App. W.D.2003) ("The jury, as fact finder, may choose to accept or reject all, some, or none of the testimony of any witness."). Additionally, there was evidence in the form of Evans's and Firth's dissolution decree indicating that Evans had possession of the firearms before he was to turn them over to Firth on July 28, 2011, under the decreed property distribution.[5] Thus, there were sufficient

4. The State argues that Libby's guest status does not affect the question of whether possession was sole or joint. In making this argument, the State relies on *State v. Guinn*, 242 S.W.3d 479, 483 (Mo.App. W.D.2008), for the proposition " 'that merely being a guest in the premises of another where drugs are found is not sufficient to sustain a conviction for possession of controlled substances.' " (quoting *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992)). But the question is not whether there was sufficient evidence to establish that Libby, as Evans's guest, possessed the firearms; the question is whether the evidence was sufficient to establish that Evans, who was the owner and not a guest, pos-

sessed the firearms. The State's reliance on *Guinn* is misplaced.

5. Because neither of the parties filed Defendant's Exhibits A or A–1 with this Court, we cannot be certain that the guns at issue were identified as those in Evans's possession before July 28, 2011. "The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." Rule 30.04(a). As the appellant, it is Evans's burden to both provide a complete record on appeal and demonstrate the existence of reversible error. *State v.*

additional incriminating circumstances tying Evans to the firearms.

Point I is denied.

## 2. The evidence demonstrated that Evans knew his possession to be unlawful.

■ In his third point on appeal, Evans argues that the evidence was insufficient to establish that he knew possessing the firearms was unlawful, given that he could have believed the Restoration of Citizenship he received from the Governor of Iowa allowed him to lawfully possess firearms.[6] We disagree.

The State presented more than sufficient evidence to establish that Evans knew he could not lawfully possess firearms, despite the Restoration of Citizenship. For example, the State presented evidence that Evans had others purchase firearms in their names on his behalf because he *knew* he was not allowed to do so. The State also presented evidence indicating that Evans attempted to have his prior conviction expunged so that he could purchase a retail gun shop—an action that would be wholly unnecessary if Evans truly believed his possession of firearms to be lawful based upon the Restoration of Citizenship.

Point III is denied.

### Adverse Inference from Lack of Fingerprint Evidence

In his second point on appeal, Evans argues that the trial court erred in granting the State's motion in limine to preclude him from introducing evidence of or arguing an adverse inference from the lack of fingerprint evidence connecting him to the firearms. This argument has been repeatedly and soundly rejected by the appellate courts in this State,[7] and we have neither the willingness nor the authority to depart from that precedent.

Point II is denied.

### Allegedly Improper Remarks during Closing Argument

In his fourth and fifth points on appeal, Evans argues that the State made improp-

---

*Dunn,* 817 S.W.2d 241, 244 (Mo. banc 1991); *State v. Charron,* 743 S.W.2d 436, 437 (Mo. App. E.D.1987). And we presume that "[a]ll evidentiary omissions in the record on appeal ... support the trial court's decision." *Thomas v. Dir. of Revenue,* 874 S.W.2d 427, 429 (Mo.App. W.D.1994). Consequently, we presume—based on Evans's failure to file the exhibits—that Defendant's Exhibits A and A–1 support the verdict and contain evidence demonstrating that Evans possessed the particular firearms at issue on the charged date.

6. The premise of Evans's argument begs the question of whether the State must prove not only that Evans knowingly possessed the firearms but also that Evans knew that possession to be unlawful. Given that the evidence presented at trial is sufficient to establish that Evans *both* knowingly possessed the firearms *and* knew his possession to be unlawful, we need not—and do not—decide whether section 571.070 requires that the State prove Evans knew the possession was unlawful.

7. *See, e.g., State v. Schneider,* 736 S.W.2d 392, 402 (Mo. banc 1987) (holding that "the defendant was not entitled to draw an adverse inference from the State's failure 'to take defendant's fingerprints from the articles he touched' at the crime scene" (quoting *State v. Holmes,* 389 S.W.2d 30, 34 (Mo.1965))); *Holmes,* 389 S.W.2d at 34 ("It was not incumbent upon the state to take defendant's fingerprints from the articles he touched or, if taken, to produce them in evidence. Nor is the state required to account for their absence."); *State v. Boyd,* 688 S.W.2d 791, 794 (Mo.App. E.D.1985) (holding that "the trial court did not err in granting the state's motion in limine to preclude the defense from arguing the absence of fingerprint evidence"); *State v. Simpson,* 611 S.W.2d 556, 560 (Mo.App. E.D. 1981) (holding that "the state is n[either] bound to gather and present all physical evidence conceivably germane to its case in chief ... [nor] required to account for its failure to gather or present such evidence").

er and prejudicial remarks during closing argument. First, he argues that the trial court erroneously overruled his objection to the State's comment on the national debate about gun-control laws prompted by a Colorado shooting that occurred a week earlier. And second, he argues that the trial court failed to sua sponte intervene when the State argued facts not in evidence regarding: (1) the delay in obtaining a search warrant, (2) Evans loading the firearms, and (3) the lack of a computer database for obtaining a gun permit in the mid–90s.

### A. Standard of Review

"The trial court is vested with broad discretion to control closing arguments." *State v. Brightman*, 388 S.W.3d 192, 200 (Mo.App. W.D.2012). "When counsel objects to a closing argument, an appellate court will reverse the trial court's decision with regard to the argument only upon a showing of abuse of discretion by the trial court," *State v. Brown*, 337 S.W.3d 12, 14 (Mo. banc 2011), and a demonstration of resulting prejudice. *State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006). "[T]he defendant has the burden to prove he was prejudiced by the improper argument, and prejudice is present only if the complained[-]of comment had a decisive effect on the jury's decision." *State v. Steele*, 314 S.W.3d 845, 851 (Mo.App. W.D.2010).

When counsel does not object, however, any claim of error regarding closing argument is not preserved and can be reviewed, if at all, for only plain error resulting in a manifest injustice. *State v. Bescher*, 247 S.W.3d 135, 141–42 (Mo.App. S.D.2008); *see also* Rule 30.20. "[A]ny assertion that the trial court erred for failure to intervene *sua sponte* ignores the possibility that an attorney may not have objected for strategic reasons." *State v. Bennett*, 201 S.W.3d 86, 89 (Mo.App. W.D. 2006). "A party cannot fail to request

relief, gamble on the verdict, and then, if adverse, request relief for the first time on appeal." *Id.*

> [S]tatements made during closing argument rarely constitute plain error. Without an objection by counsel, a trial court's options are narrowed to uninvited interference with summation, which may itself constitute error. For the Defendant to carry his burden of showing plain error he must prove that the prosecutor's statement had a decisive effect on the jury's verdict. The prosecutor's statement is decisive when there is a reasonable probability that the verdict would have been different had the error not been committed.

*State v. Wright*, 216 S.W.3d 196, 201 (Mo. App. S.D.2007) (citations omitted).

Here, the only objection raised by Evans was to the prosecutor's comment on the Colorado shooting. Evans did not object to the other comments he complains of on appeal.

### B. The prosecutor's comment on the Colorado shooting did not prejudice Evans.

■ The prosecutor began his closing argument by discussing the statute under which Evans was charged. He then noted that "[t]here's quite a debate raging now in Colorado and elsewhere about should we make gun laws more strict or should we not and so forth." Evans objected, arguing that because the Colorado shooting incident had occurred only a week ago, the argument was "provocative" to the jury. The court overruled Evans's objection, and the prosecutor continued:

> Raging. And it seems to me and perhaps some of you, no matter where you stand on that particular issue, that by golly we're in court here because we have a law on the books. And the facts and the evidence that you have heard call for

that law to be enforced. Not a question of if we need more or other laws, this is a law on the books.

Evans raised a related claim of error in his motion for new trial.

Evans baldly asserts that the prosecutor's comments were prejudicial and inflammatory, and he then directs us to cases involving the admission of prejudicial evidence at trial in support of his bald assertion, without making even a minimal effort to tie the two concepts together. He then completely fails to identify *how* the comments were prejudicial. While certainly the topic of the Colorado shooting and the issue of gun control, itself, are "provocative," there is nothing inherently prejudicial or inflammatory in the prosecutor's remarks in this context. The prosecutor did nothing more than urge the jurors to follow the law as written, even if they disagreed with it, which is a perfectly legitimate argument for the State to make. *See State v. Roberts,* 948 S.W.2d 577, 593–94 (Mo. banc 1997) ("A prosecutor may argue the need for strong law enforcement, the prevalence of crime in the community, and that conviction of the defendant is part of the jury's duty to uphold the law and prevent crime. The prosecutor may urge the jury to consider the effect upon society if the law is not upheld." (citation omitted)).

**C. The prosecutor argued reasonable inferences from the evidence.**

Evans argues that the remaining comments—to which he failed to object—constituted improper comments on facts not in evidence. The comments arose in the following contexts. The first remark Evans complains of arose when the prosecutor was explaining the "on or about" language regarding the date identified in the verdict director: "It's on or about July 12th, July 11th, July 13th. The law couldn't get a search warrant for the house until after he had been arrested on July 12th." Evans now argues that there was no evidence about when the search warrant could be obtained.

The second remark Evans now finds objectionable arose when the prosecutor was arguing that Evans constructively possessed the duffel bag containing the firearms: "Who loaded four handguns, zipped them up in a duff[el] bag within easy reach to flee, except this defendant? ... He has constructive possession, as the judge told you, if such person has the power and intention at a given time to exercise dominion and control over the object, either by himself as if he were to just grab the duff[el] bag and run, or through other persons." Evans now argues that there was no evidence that he loaded the guns and zipped the duffel bag.

The final remark about which Evans complains arose during the State's rebuttal argument, when the prosecutor was responding to Evans's argument that the fact that the Gentry County Sheriff issued Evans a gun permit somehow justified his unlawful possession:

A gun permit issued in 1994 or 1996 or whenever, doesn't say anything about who possessed a particular handgun on July 12th of 2011.... Use your common sense. Do you think that the defendant walked into the Gentry County Sheriff's office in 1994 and said, "I'm a felon, can I have a gun permit?" Of course he didn't. They didn't have computer background checks and all those things back in those days. And a sheriff relied on what people told him.

Evans now argues that this comment was not supported by the evidence.

▮ Evans wholly fails to identify *any* prejudice, much less a manifest injustice, resulting from any of these remarks, which all appear to be supported either by direct

evidence or reasonable inferences derived therefrom. "[T]he State has the right to argue the evidence and the reasonable inferences from that evidence...." *State v. Delancy*, 258 S.W.3d 110, 116 (Mo.App. E.D.2008). As such, Evans has utterly failed to demonstrate error of any sort, plain or otherwise.

Points IV and V are denied.

## Conclusion

The evidence was sufficient to support the elements of the charged offenses. The trial court committed no error in its rulings, and Evans has completely failed to demonstrate any plain error in the trial court's failure to sua sponte intervene in closing argument. The convictions and sentences are affirmed.

THOMAS H. NEWTON, Presiding Judge, and GARY D. WITT, Judge, concur.

Walter L. Hawkes, Appellant Pro-se.

Martha E. Ravenhill, for Respondent.

Before Division One: VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and ANTHONY REX GABBERT, Judge.