**STATE of Missouri, Respondent,**

v.

**David HUGHES, Appellant.**

**David HUGHES, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 63015, 66364.**

Missouri Court of Appeals,
Eastern District.

Sept. 5, 1995.

Rehearing Denied Oct. 30, 1995.

David E. Woods, O'Fallon, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for the State.

TURNAGE, Senior Judge.

David Hughes, Jr. was convicted by a jury of the class B felony of sale of a controlled substance in violation of § 195.211, RSMo 1986,[1] and sentenced to ten years imprisonment as a persistent offender. Hughes filed a motion to vacate the conviction under Rule 29.15.

On this appeal Hughes contends the court erred in failing to order a mental examination, in overruling objections to the State's final argument and in sustaining an objection during the cross-examination of a police officer. Hughes also appeals the denial of his 29.15 motion and contends counsel failed to file an amended motion and was ineffective for failing to obtain a mental examination. Affirmed.

Hughes does not challenge the sufficiency of the evidence. Briefly stated, Hughes was arrested when two St. Louis County police officers operating undercover identified

---

1. All statutory references are to RSMo 1986.

Hughes and his brother, Dennis, as being the persons who sold drugs to the officers on February 13, 1992.

The first day of trial was spent selecting the jury. Opening statements by both sides were made and the two police officers testified on the second day of trial. After the second officer had testified, the court's attention was called to the fact that a number of people had approached a public defender about Dennis Hughes testifying. The public defender informed the court and the court examined Dennis out of the hearing of the jury. During the course of that examination, Hughes spoke out and urged Dennis to take the "5th Commandment [sic]." Hughes also interrupted the proceedings to tell Dennis that they were tricking him.[2] At about that time Hughes' counsel told the court that Hughes wanted to address the court. Hughes told the court that he wanted to postpone the trial because he was presently under care in a State Hospital. The court inquired as to why he had not said that before the trial started and Hughes replied that "it just came up, I got that spell. Sometime I get like that." The court commented that Hughes had acted pretty frisky when he was yelling at his brother to take the Fifth and Hughes replied that he was sick. Hughes at that point collapsed.

The court stated that it would continue the matter until the next day and that it would have Hughes examined.

Within a few minutes after Hughes was carried from the court room, he called for his attorney and conferred with him. And within a few minutes after the attorney had returned from the room where Hughes was being kept, Hughes called for his attorney and consulted with him further.

The court had the chief medical officer of St. Louis County examine Hughes and when court convened the next day the court had a report from her which stated that Hughes was able to continue with the trial. The court also had requested the State Hospital at Farmington to send Hughes' records and when court resumed the court stated that the records had arrived. The record was a single sheet which stated that Hughes was treated as an outpatient on September 10, 1992[3] and was prescribed no medication. He was diagnosed as having mild retardation. The court indicated that it felt that Hughes was faking his collapse solely for the purpose of delaying trial.

The trial continued and Dennis later testified that he had sold the drugs to the officers and Hughes had not.

■ Hughes first contends that the court erred in failing to have him examined to determine his mental competence to proceed with the trial. This point is raised as plain error. Section 552.020.2 provides that a judge may have a criminal defendant examined by mental health professionals whenever the judge has reasonable cause to believe the accused lacks mental fitness to proceed.

The records from the hospital in Farmington where Hughes said he was at the time of trial indicated only that Hughes was seen as an outpatient with no medication prescribed. The diagnosis of mild retardation did not indicate a lack of mental fitness to proceed. The court had the opportunity to see and observe Hughes and commented on his yelling to his brother. Further, the court had Hughes examined before the trial resumed the next day. The physician wrote a report to the court stating no finding was made to prevent Hughes from continuing with the trial. The court said that it appeared to the court that Hughes had faked his collapse in order to abort the trial.[4] Much of Hughes' argument centers on a finding in 1987 that

---

2. Apparently, as near as can be gleaned from the record, there was a fear on the part of several persons that Dennis was going to testify against Hughes and they approached a public defender to learn if Dennis could be required to testify. It would further appear that Hughes feared that Dennis might testify against him from the outbursts made by Hughes.

3. The trial began on September 14, 1992.

4. It is interesting to note that trial counsel for Hughes testified in the hearing on the 29.15 motion that he thought Hughes had faked his collapse. Counsel said he based this on the fact that Hughes had put out his hands to brace himself before he went to the floor. Counsel also stated Hughes had said he would disrupt the trial if things were not going well.

Hughes was found not guilty of a crime by reason of mental disease or defect, but the court was not informed of that.

In short, there was nothing before the court to supply reasonable cause to believe Hughes lacked mental fitness to proceed and there was no error in failing to order a mental examination. This court does not find that manifest injustice or a miscarriage of justice has resulted meriting relief under plain error. Rule 30.20.

■ Hughes next contends the court erred in failing to sustain objections made to the final argument by the State. The prosecutor told the jury "that the jury was the voice of the community, of St. Louis County, and you set the standards for St. Louis County." The prosecutor further said the jury should set a standard that would prevent people from going around and selling drugs in a residential area. The argument continued that the jury should come back with a verdict of guilty and tell the defendant that he could not go around pushing drugs and it should send a message to others that there should be no more drugs.

■ Hughes contends the argument inflamed the passions of the jury. In *State v. Cobb,* 875 S.W.2d 533, 537[6–8] (Mo. banc 1994) (citation omitted), the Court said that "[a] prosecutor may legitimately argue that the jury should 'send a message' that criminal conduct will not be tolerated or should be severely punished." In *State v. Jeffries,* 858 S.W.2d 821, 825[12, 13] (Mo.App.E.D.1993), this court stated that "a prosecutor's argument is proper so long as the thrust of it is that a stiff sentence would deter the defendant as well as others from committing similar crimes." This court further stated that a prosecutor may argue the prevalence of crime, the personal safety of the inhabitants in a community, and the jury's duty to uphold the law.

Here, the prosecutor's argument was properly directed toward urging the jury to uphold the law and to send a message that criminal conduct in selling drugs would not be tolerated and should be punished. There is no design discerned in the prosecutor's argument to incite the passions of the jury.

The court properly overruled the objections to the argument.

■ Hughes next contends the court improperly sustained an objection to a question directed to one of the police officers who made the arrest. Hughes raises this point as plain error. The officer was asked on cross-examination about other drug buys the officer had made on that day and the officer stated that he could not remember where the other buys were made nor who the suspects were. Counsel next inquired about buys which the officer had made previous to the day on which Hughes was arrested and the court sustained an objection to that question. Hughes contends that this impermissibly curtailed his right to cross-examine the officer as to the officer's ability to remember the details surrounding Hughes' arrest. There is no doubt that a party on cross-examination may test the ability of the witness to recall matters about which the witness testified and to test the credibility of the witness. However, the scope of cross-examination on collateral matters rests within the sound discretion of the trial court. *State v. McDaniel,* 392 S.W.2d 310, 315[4–6] (Mo.1965). In *McDaniel,* the Court refused to allow counsel to attack a witnesses' credibility by demonstrating her lack of ability to identify accurately counsel involved in the case. Here the court allowed the officer to be cross-examined about other buys which he had made on the day Hughes was arrested and the officer stated he could not recall where those buys occurred or who was involved. The officer testified that he had been involved in one hundred buys. Counsel was allowed to attack the credibility of the officer by showing his lack of memory of other events which occurred on the same day as the arrest of Hughes. There is no abuse of discretion shown in refusing to allow questions concerning buys the officer had made on previous days.

■ In the appeal from the denial of his Rule 29.15 motion Hughes contends that he is entitled to a remand because his counsel failed to file an amended motion after Hughes had filed a pro se motion. Hughes relies upon *Luleff v. State,* 807 S.W.2d 495, 498[3–7] (Mo. banc 1991). There the Court

stated that counsel should make a determination that the filing of an amended motion is not warranted a matter of record. In this case the court held a hearing on the pro se motion and counsel other than trial counsel represented Hughes *during the hearing.* The court allowed counsel to adduce whatever evidence he had on all of the matters raised in the motion. There is no indication that counsel had any other matters which he desired to raise as grounds for relief. Thus Hughes was given a full hearing on all matters which he wanted to present. There would be no point in a remand when there is no showing that there are other grounds for relief which are desired to be presented. As stated in *Fandrich v. State,* 827 S.W.2d 270, 272[3, 4] (Mo.App.1992), "[a] remand would serve no purpose where the motion court has afforded the defendant a full review on all of his claims." There is certainly no evidence that counsel abandoned Hughes. Thus, there is no ground for a remand even though counsel technically violated *Luleff* when he did not state on the record that there was no necessity to file an amended petition.

 Hughes further contends that the court clearly erred in overruling his motion because counsel failed to state facts and obtain evidence concerning Hughes' arrest record and mugshot. That claim was specifically withdrawn at the hearing on the motion. Hughes further argues that his trial counsel was ineffective for failure to procure Hughes' mother and cousin as witnesses. Trial counsel testified that Hughes told him he did not want his mother to testify but changed his mind the day of trial even though he had had months to decide. He said Hughes delayed telling him that he wanted his cousin to testify until the day of trial. The trial began seven months after Hughes was arrested. The court found that Hughes had ample time to discover and discuss witnesses rather than wait until the day of trial. In this finding the court chose to believe trial counsel which was its right. *State v. Twenter,* 818 S.W.2d 628, 635[8, 9] (Mo. banc 1991).

 Hughes finally contends that his trial counsel was ineffective because he failed to obtain a mental examination of Hughes.[5] Trial counsel testified at the hearing on the 29.15 motion and stated that he was aware that Hughes had been found not guilty by reason of mental disease or defect in 1987.

Counsel testified that he talked with Hughes on several occasions about having a mental examination but that Hughes consistently refused to have such an examination because of his insistence that he was innocent. Counsel said that each time he tried to discuss a mental examination with Hughes that Hughes would go off on a discussion of his innocence and the fact that he did not desire to have a mental examination. Counsel stated that Hughes said he had witnesses to prove his innocence and he wanted to go to trial immediately. Counsel felt that if he tried to force Hughes to have a mental examination it would be almost impossible for him to work with Hughes. Counsel testified that during the course of trial Hughes was constantly whispering questions to counsel that he wanted counsel to ask. Counsel further testified that he did not detect any behavior on the part of Hughes that would lead him to believe that Hughes was suffering from any mental disease or defect. He said that he was able to communicate with Hughes and that Hughes understood the case against him.

When Hughes testified during the trial he stated that he was "a mental retarded." He said he had difficulty in vocalizing words from time to time. After release from prison and the Farmington State Hospital, Hughes was on parole. During that time he was employed in a fast food restaurant and an auto detailing shop. When he was arrested on this charge, his parole was apparently revoked and he was taken to the State Hospital at Farmington which accounts for his having been seen there prior to the trial.

In this point Hughes principally argues that the finding in 1987 of a mental disease or defect mandates that counsel should have insisted on obtaining a mental examination

---

5. Section 552.020.1 provides that "no person who as a result of mental disease or defect lacks capacity to understand the proceedings against

him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures."

for Hughes. In *Ketcherside v. State*, 842 S.W.2d 182, 183[3] (Mo.App.E.D.1992), this court held that counsel is ineffective in failing to investigate and to raise a defense of mental incompetency only when counsel had some warning sign or suggestion of mental aberration from his client. This court further stated that there is no absolute or routine duty on counsel to initiate an independent examination of the mental condition of the client.

In this case there is no indication in the record that counsel had any reason to think that Hughes was suffering from any lack of ability to understand and appreciate the charges against him. Absent some evidence of behavior on the part of Hughes that would lead counsel to believe that Hughes was suffering from some mental disease or defect which would prevent him from having the capacity to understand the proceedings against him, or to assist in his defense, there was no duty on the part of counsel to have Hughes examined by mental health professionals. A thorough review of the record fails to reveal any evidence that Hughes did not have the ability to understand the proceedings against him and he did in fact assist in his own defense.[6]

The judgment and sentence is affirmed. The judgment denying relief on the 29.15 motion is affirmed.

CHARLES B. BLACKMAR, Senior Judge, and WHITE, P.J., concur.

---

**6.** It will be recalled that Hughes testified in his own defense during the trial. A review of his testimony reveals that he clearly understood the charges against him. He displayed no lack of understanding of the questions either on direct or cross-examination and his answers were responsive and lucid. Hughes steadfastly denied that he had sold drugs.