STATE of Missouri, Respondent,

v.

Robert TILDEN, Appellant.

No. WD 51633.

Missouri Court of Appeals,
Western District.

March 16, 1999.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for respondent.

Before Presiding Judge ROBERT ULRICH, Judge HAROLD LOWENSTEIN and Judge JOSEPH ELLIS.

LOWENSTEIN, Judge.

The issue at the heart of this criminal appeal is whether, under the United States Constitution and Missouri's constitution and statutes, there was sufficient evidence to support a reasonable cause belief that the defendant was not mentally competent to understand the proceedings or able to assist in his defense, thereby requiring defendant's counsel to challenge his competence, or in the alternative, mandate the court to *sua sponte* order a psychiatric examination at or prior to trial or sentencing.

In a nutshell, a defendant's Constitutional due process rights to a fair trial are violated when the person is tried, convicted, and sentenced when sufficient evidence existed to raise a reasonable doubt as to the mental competency of the defendant to stand trial, but there was a failure to inquire as to competence by way of a mental examination (*infra*, Section 552.020.2 and .3, RSMo Cum. Supp.1997) and then by way of a hearing. (*infra*, Section 552.020.7 and .8). *Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Drope v. Missouri,* 420 U.S. 162, 181–2, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Brent Binge et al., Project, *Criminal Procedure Project,* 85 Geo. L.J. 893, 1164–5 (1997). A defendant is incompetent to stand trial when he is unable to understand the proceedings or to assist counsel in the defense.

### I.

Defendant Robert Tilden's case was tried to the court. He was convicted of one count of sodomy of a child, and sentenced to ten years in the Department of Corrections with a recommendation that he be placed in the treatment center in Farmington. The facts of the crime, and the procedural history of this case, are unusual as well as complicated. First a chronology of events is presented, followed by a factual narrative.

1958 Contracted "Asian flu" at the age of 18 months. The resulting high fever left Tilden brain damaged.

1964 Admitted to Mid–Missouri Mental Health Center (MMMHC) at the age of six where he was treated with Ritalin and Mellaril due to his hyperactivity.

1966 Received further psychiatric treatment and was diagnosed with "Minimal Organic Brain Syndrome." Received additional outpatient treatments in 1967, 1968, 1970, 1971, and 1976.

1985 Admitted to University Hospital from May 29 to June 7 for inpatient treatment for "self-mutilating behavior" related to excessive use of alcohol.

1987 Suffered severe head trauma from a fall from a truck, and was in a coma for about a month. Underwent brain surgery where doctors performed a "right posterior temporal lobe craniotomy," removing a portion of Tilden's right temporal bone. After recovery, Tilden was transferred to a rehabilitation center.

1991 Suffered grand mal seizure.

1994 December 27–Date of offense and arrest.

December 28–Tilden is taken to MMMHC under a 96–hour involuntary admission order because of fear by police that he would harm himself or others.

1995 January 4–After 96 hour evaluation, Tilden is readmitted to the mental health facility "voluntarily" and is retained in, and evaluated by, MMMHC for an additional 26 days.

June 22–Trial begins.

June 26–Convicted.

JulyPre–Sentence Investigation (PSI) completed and filed prior to sentencing.

September 11–Sentenced to Department of Corrections facility in Farmington, but ordered placed in the mental health treatment portion of the facility.

September 18–Appellant committed to the Farmington Correctional Center. Appeal filed in this court.

1995 May 9–Tilden files pro se Rule 29.15 motion.

June 12–With new attorney, files amended motion and request for an evidentiary hearing under Rule 29.15, due to failure of counsel to challenge Tilden's competence to proceed.

September 25–Evidentiary hearing held.

1997 April 25–29.15 motion denied.

1998 January 30–Appellant files motion in appellate court to appoint a limited guardian for purposes of appeal, or in the alternative, to stay appeal and remand for a competency hearing.

February 19–Appeal held in abeyance and remanded for a competency determination.

May-State stipulates that Tilden is incompetent to prosecute his appeal and Guardian Ad Litem is appointed.

Tilden's father died of a stroke in 1972. His mother, with whom Tilden resided prior to the incident, lives in Moberly. According to psychiatric assessments, Tilden has a history of chronic alcohol abuse; Tilden also considers himself to be a "full-fledged alcoholic." However, due to Tilden's inconsistent information, it is difficult to assess when his alcohol abuse began or what has been done to treat it. While admitted to MMMHC following his arrest, Tilden reported that he had been sober, and in outpatient counseling, for drinking during the nine months prior to his arrest. Tilden also reports to have been drinking a quart of whiskey and a 12–pack of beer daily. He has also reported that he began drinking at an early age, stating both that he began drinking at age 3 and that he began drinking at age 13 or 14.

Tilden's criminal history, not shown in the timeline, includes an arrest and conviction, in October 1991, for sexual abuse for pinching a woman's breast. He also had six arrests, resulting in four convictions, for stealing and/or trespassing between 1992 and 1994. Tilden never spent more than four months in jail for these offenses because he was continuously given either probation or a few days in jail. During the motion hearing, the prosecutor stated, "that over the history of all those years, everybody—I don't know that this Court specifically, but myself and Mr. Marshall [trial counsel] many times dealt with Mr. Tilden and *we were aware of his problems*. And we dealt with his cases as best we could; but, many times, it required *trying to find treatment programs* in resolving these issues." (emphasis added).

According to the information in the presentence investigation (PSI), Robert Tilden's psychological and physiological problems began in infancy and continued into adulthood. He is now forty years old. When he was only 18 months old, the "Asian Flu" left him with "permanent and significant" brain damage, which would later affect his ability to learn to read and write. Beginning in childhood, his hyperactivity required the use of prescription drugs. In 1987, he fell off a truck and suffered severe head trauma, which left him in a coma for almost a month. The accident required brain surgery, and portions of Tilden's temporal lobe tip were removed. He has been receiving social security disability income relief since that time; however, his mother, who acts as his guardian, takes care of his checks for him. It was also reported in the PSI that Tilden's daily activities include visiting a dead friend at Oakland Cemetery in Moberly, and Tilden stated that, "I go there mainly to talk to the animals." He explained that he talks to deer, hoot owls, and other animals.

According to information in the PSI, Tilden has an IQ of 73, he is illiterate, his

"memory quotient" falls at about the 4th percentile, and he has "severe distractibility" and "impaired attention." He is a grown forty-year-old (thirty-eight at the time of trial) who lives with, and requires the aid of, his mother, and who "operates on a nine year old level without hope for total recovery."

Although his behavior in court alone was not so abnormal as to raise doubts concerning his competency, there was enough information to cause the trial court to note its acknowledgement of Tilden's disabilities. At sentencing, the court stated that it considered Tilden's situation special, taking precautions to insure that they did not "treat him like others who may be in the institution, that there's a special program for people like him." The trial court also stated its acknowledgment that Tilden's "chronological age of being 38, he may not, you know, reflect like that." In addition, the court also asked Tilden more than once whether he was aware that the doctors had deemed him competent to stand trial.

■ The incident which brought Tilden before the trial court, occurred on December 27, 1994. Eight-year-old B.L.B. walked down from his grandparent's house to visit Tilden, who lived a few doors away. At some point, Tilden and B.L.B. were alone in a small garage next to the house. Tilden unsnapped the boy's pants and pulled them down, then pulled down B.L.B's underwear. Tilden told B.L.B. that "this is what girls will do" and proceeded to put his mouth on B.L.B's "privates." When B.L.B's grandfather showed up, B.L.B. pulled up his pants and underwear, but the grandfather saw the boy standing in front of Tilden with his (B.L.B's) pants still open with Tilden seated in front of him in the dark garage. The grandfather took B.L.B. home and later filed a police report describing the incident. B.L.B reported that he told Tilden he had to defecate, but that Tilden would not permit him to use the toilet. Rather, Tilden instructed B.L.B. to relieve himself in the corner of the garage and provided B.L.B. with a paper towel.

Following his arrest, Tilden was taken by authorities to Columbia and admitted to the Mid–Missouri Mental Health Center (MMMHC) for a 96–hour involuntary admission because police feared he was a danger to himself or others. Following the expiration of the original admission period, Tilden remained at MMMHC on a voluntary basis for the next 26 days. Many tests and evaluations were performed, which were included in the PSI. These mental evaluations never focused on, or gave an opinion as to, the accused's competency to stand trial. It appears however, there was some type of misunderstanding on this matter at the trial court, for at sentencing, the court asked Tilden, "they sent you to Mid–Mo for an evaluation ... of whether you should be able to stand trial, is that right?" Tilden responded, "Yes, sir. Is the Court aware that I am schizophrenic?" The court also asked, "He had a 552 exam?". The prosecutor said, "Yes, he did." Also, at the hearing on the Rule 29.15 motion, Tilden was again asked if his competency to stand trial had been evaluated; the prosecutor asked, "You had been to the Department of Mental Health several other times, had you not, ... for evaluations and what have you ... and on all occasions, they decided that you were competent to stand trial didn't they?". Tilden answered in the affirmative. At the motion hearing, however, Tilden's attorney asked the court to take judicial notice of the criminal file, which, he pointed out, did not contain a request to have a Section 552 evaluation.

Appellant's first point, which is dispositive, concerns the issue of competency. Specifically, he asserts trial counsel was ineffective for failing to request a mental exam, and further, the judgment be set aside for the trial court's failure to *sua sponte* order a mental exam and hearing pursuant to Section 552.020. However, before addressing the matter of mental competency of the defendant, this court rules, without repeating the pertinent facts of the crime as just stated, that there was sufficient evidence in this record to sustain the conviction.

II.

The court now returns to Tilden's post-conviction claim for relief under Rule 29.15 that his constitutional rights were violated for failure to properly evaluate his mental

competency to stand trial. "Incompetency is distinct from the insanity defense because it involves the defendant's mental state at the time of trial rather than at the time of the offense," Binge et al., *supra,* at 1164 & n. 1395, citing *Lynch v. Overholser,* 369 U.S. 705, 708–9, 715, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962). The so-called insanity defense, of not being responsible for criminal conduct, Section 552.030, RSMo 1994, was not raised in this case and is not implicated in this appeal. Missouri's law and procedure dealing with lack of mental capacity to stand trial and conviction grows from, and is crafted to comport with, a long line of federal law, which in turn dates from England. Our statute on the subject is contained in § 552.020.1–14, RSMo Cum. Supp 1997. (All further references to the statutes will be only to the applicable number.)

Subsection 552.020.1 reads:

"No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the capacity endures."

Paraphrased, and as pertinent to this case, subsection .2 states,

"Whenever any judge has reasonable cause to believe that the accused lacks mental fitness to proceed, he shall, upon his own motion or upon motion filed by the state or...on behalf of the accused, by order of record," appoint either private or state psychiatrists or psychologists to perform an examination of the defendant and file a report with the court.

As applicable here, Subsection .3 requires that the report to the court contain:

1) detailed findings, 2) an opinion as to whether the defendant has a mental disease or defect, and 3) an opinion to a reasonable degree of certainty whether the accused by reason of such disease or defect lacks capacity to understand the proceedings or to assist in the defense.

Subsection .6 tells the clerk to file and deliver copies of any report to the parties who shall then have the opportunity to have the defendant examined.

Subsection .7 says if neither side requests a second exam on the defendant's fitness to proceed, nor contests the findings of the reports under .3, the court "may make a determination and finding on the basis of the report filed or may hold a hearing on its own motion. If any such opinion is contested, the court shall hold a hearing on the issue. The court shall determine the issue of mental fitness to proceed and may impanel a jury of six persons to assist in making the determination."

Subsection .9 reads: "If the court determines that the accused lacks mental fitness to proceed, the criminal proceedings shall be suspended and the court shall commit him to the director of mental health."

Subsection .12 handles the question of what to do if the issue of mental fitness is "raised after a jury was impaneled," and allows the judge to declare a mistrial, without double jeopardy implications if the judge determines the person lacks fitness to proceed, or the judge orders the accused committed for an examination. Other portions of Section 552.020 will be addressed later in the opinion.

Missouri's statutory scheme is similar to the federal statute, 18 U.S.C. § 4241 which is set out in pertinent part in the following footnote.[1] Only a slight difference exists be-

---

1. 4241. Determination of mental competency to stand trial

   (a) *Motion to determine competency of defendant.*—At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe

that the defendant *may presently be suffering* from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. (emphasis added).

   (b) Psychiatric or psychological examination and report.—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be

tween our statute and the federal law. Federal law demands an exam if there is reasonable cause for the court to believe the defendant "may presently be suffering," as compared to Missouri's language of, "whenever any judge has reasonable cause to believe the accused lacks mental fitness to proceed." Despite this slight difference, both laws, as applicable here, use the mandatory language of "shall," in directing a trial court to order an exam. The next step, if necessary, based on the result of the exam, is to order a hearing and then make a determination of defendant's mental fitness to proceed. What must be remembered here is, there was never a request by the defendant for a Section 552 exam, the most common impetus for ordering a mental fitness exam, so no hearing was held for a determination of Tilden's mental fitness for trial. This then, is not the typical case where the defendant's lawyer expresses to the court a problem with his client's mental ability to assist or understand the trial or the consequences of sentencing. Most of the case law interpreting state and federal statutes concern: (1) the denial of an exam; or (2) the subsequent failure to call for a hearing; or (3) the standard of review and quantum of evidence required for a determination that the defendant is mentally fit to proceed.

### BACKGROUND OF COMPETENCY TO STAND TRIAL

The principle that it is fundamentally unfair to try an incompetent defendant, dates back to English common law as written in 4 William Blackstone Commentaries (9th ed. 1783), *cited in* Benjamin James Vernia, Note, *The Burden of Proving Competence to Stand Trial: Due Process at the Limits of Adversarial Justice*, 45 Vand. L.Rev. 199, 201

(1991); *see also* Joseph G. Cook, *Constitutional Rights of the Accused 3d* (CBC), Section 21:1 (1996). In *Youtsey v. United States*, 97 F. 937 (6th Cir.1899), where the epileptic defendant was charged with multiple counts of embezzlement and fraud, the court held the trial court did not indicate how it satisfied itself on the sanity of the defendant, but under the allegations of the defendant, the court had a duty to consider whether the defendant was able to rationally defend himself at trial. *Id.* at 941, 946–7.

In *Dusky v. United States*, 362 U.S. 402, 403, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), a per curium opinion, the Court, interpreting the then existing federal statute, said it was not enough for the trial judge to merely find the defendant was oriented to time and place and had some recollection of events, but the "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." The underlying conviction was reversed. The *Dusky* standard has been adopted in all the states of the union. Vernia, *supra,* at 203 & n. 23. *Godinez v. Moran,* 509 U.S. 389, 402, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), held that states were free to adopt competency standards that were more elaborate than *Dusky,* although such formulations are not required by the due process clause. The opinion also held the competency standard applied to guilty pleas and to waiving of the right to counsel. *Id.* at 397–400, 113 S.Ct. 2680.

Next came *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Pate had been charged with the murder of his wife. There were four witnesses who said

---

filed with the court, pursuant to the provisions of section 4247(b) and (c).

(c) Hearing.—The hearing shall be conducted pursuant to the provisions of section 4247(d).

(d) Determination and disposition.—If, after the hearing, the court finds by a preponderance of the evidence that defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attor-

ney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and

(2) for an additional reasonable period of time until—

(A) his mental condition is so improved that trial may proceed ...

Pate was not competent to stand trial. He had suffered a trauma to the head as a child. Pate's counsel did not demand a competency hearing under Illinois state law, and the state Supreme Court held there was insufficient evidence to have ordered a hearing. The U.S. Supreme Court reversed, saying trial counsel's failure to request a hearing did not waive a determination on mental competence, saying when the evidence presents "a bona fide doubt" as to competency to stand trial, the court's failure *sua sponte* to order an evaluation, demands a new trial. *Id.* at 385, 86 S.Ct. 836. Further, the Court discounted as determinative the normal demeanor of the defendant at trial, when there was ample uncontradicted testimony as to Pate's pronounced history of irrational behavior. *Id.* at 386, 86 S.Ct. 836.

In 1975, the Court decided *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) where the defendant was convicted of raping his wife. His request for a trial date continuance to receive psychiatric treatment and for a proper mental examination was denied. During trial, Drope attempted suicide. The victim testified as to an attempt on her life by Drope, and his irrational behavior, such as rolling down steps when he did not get his way, and his treatment at [St. Louis] "City Hospital." *Id.* at 166, 95 S.Ct. 896. The Court agreed with Missouri courts in saying that the suicide attempt standing alone did not automatically decide the question of competency, but said the state did not give proper weight to evidence of the defendant's incompetence to stand trial. *Id.* at 179, 95 S.Ct. 896. The Court wrestled with the quantum of evidence needed in determining these issues, saying there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Id.* at 180, 95 S.Ct. 896. The majority opinion pointed to three relevant sources of information on the issue, a "defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial ...," may even suffice on their own to justify further inquiry. *Id.* Expanding beyond *Pate v. Robinson,* the Court at page 181 wrote that even when a defendant is competent at the beginning of trial, the trial judge "must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence ...," and when confronted with a bona fide doubt on competency, the court should, "suspend the trial until such an evaluation could be made."

### SCOPE OF REVIEW

The reader is again advised that the set of facts here is out of the ordinary. Briefly, Tilden's trial counsel did not, prior to sentencing, present a motion to the court for a mental examination pursuant to 552.020.2, nor did the court, while having stated doubts as to the defendant's mental capacity to stand trial, *sua sponte* order an exam. At the Rule 29.15 hearing, trial counsel remembered little about either the case or the defendant. The first time defense counsel raised the issue of competency to stand trial, came after the defendant was in prison, and the first action taken on competency came via the motion and the order from this court for an exam. The state's stipulation as to competency followed.

The thrust of Missouri statutory law, and indeed the growth of federal common and statutory law, is to protect a mentally incompetent defendant from being put to trial and being sentenced. Where no formal request is presented, what is the standard of review when the three major players in the trial process, the defendant, the prosecution and the judge, all of whom have a most specific duty to raise the issue of competency, fail to raise the issue? 552.020.2 merely states that the judge shall order the exam when a motion is presented to the court, or on the court's own motion where there is "reasonable cause to believe the accused lacks the mental fitness...."

■ The federal, and indeed this state's scheme on the issue of mental competency to stand trial, generally, is processed in several phases. First, it must come to the attention of the court that there is reasonable cause to believe the accused is not competent to understand the proceedings or to

properly assist counsel. Second, if the court has reasonable cause to question the accused's competency to proceed, the court "shall" order a mental examination. Third, after receiving a report (or reports), the court must make a decision as to whether to hold a competency hearing. *United States v. McEachern,* 465 F.2d 833, 836 (5 th Cir. 1972).

To repeat, this is not a case where a request for a competency exam and review has been made by defense counsel and denied. Neither is this a case where, after an exam, the court denies the request for a hearing. Nor, is this even a review of a decision, after hearing, that a defendant is mentally competent. Rather, this is a case where the accused, who had a history of severe psychological and mental problems, never received the benefit of having the issue of his competency raised. "Thus the issue is not whether [the defendant] was competent to stand trial . . . ," but whether the failure to order a mental exam of the defendant under §552.020.2, ". . . constituted a denial of due process." *Reynolds v. Norris,* 86 F.3d 796, 801 (8 th Cir.1996)(issue concerned failure to hold a competency hearing).

■ There is little precedent as to appellate review on the issue raised here, whether there was sufficient evidence at trial to have ordered a Section 552.020 exam. It must be said that trial courts are not "automatons" that must grant these motions merely because they are filed. *McEachern,* 465 F.2d at 837. Although courts speak of a range of discretion in whether to grant the motion for an exam, this court rules that once the trial court is presented with sufficient facts to form reasonable cause to believe the accused lacks the mental fitness to proceed, whether by motion, by facts coming before it, or through its own observations, the court is mandated to order a §552.020 mental exam. *Id.* at 837–8. In discussing *Pate,* the court in *Moore v. United States,* 464 F.2d 663, 666 (9 th Cir.1972), said the language "substantial evidence" of incompetence includes all information properly before the court, whether from testimony, exhibits or reports, and once there is substantial evidence which raises reasonable

doubt about competency, the trial court must pursue the matter. See also *Chavez v. United States,* 656 F.2d 512, 517–8 (9 th Cir. 1981)(would a reasonable judge be expected to experience a genuine doubt as to the defendant's competence). Our Supreme Court in *State v. Tokar,* 918 S.W.2d 753, 762–4 (Mo. banc 1996), said an appellate court should determine if a reasonable judge in the same situation as the trial judge should have experienced doubt as to the defendant's competency, and also, *Drope* requires that the trial court make a careful analysis of facts in the record before it, and at trial raise reasonable cause.

■ Stated another way, where the issue of mental competency has been raised by motion or by the trial court, and has been decided, the standard of review is that the trial court's determination of competency must stand unless unsupported by substantial evidence, without appellate weighing of the evidence, and determining if a reasonable judge in the same situation would have experienced doubt as to competency. *State v. Frezzell,* 958 S.W.2d 101, 104 (Mo.App.1998). The situation here is, that despite many warning flags about competency, and the concern of the trial judge, the precise issue of mental competency to stand trial was never specifically addressed nor subject to a court determination, so review in the instant case is of a non-decision.

■ As best stated by the eastern district in *State v. Bolden,* 671 S.W.2d 418, 419 (Mo.App.1984), the trial court has broad discretion in denying a defendant's motion for an exam, but the court "has a duty to confront [the] issue" of competency at any stage of the trial. At the risk of presenting an amorphous standard, the court holds: a) that where the available facts do not rise to the level of "reasonable cause," the court's decision, whether by way of ruling on a motion or on the trial court's inherent and statutory power to *sua sponte* order an exam, then failure to so order a mental competency exam is reviewed on abuse of discretion standard, but b) when sufficient information comes before the trial court to raise a genuine doubt, or in the words of our statute to "raise a reasonable cause to believe," as to

the accused's competency, there is a non-relenting duty to order an exam and failure to do so will be reviewed carefully because of the constitutional implications. The mandatory rather than discretionary nature of this duty under (b), above, arises from the philosophical underpinnings of state and federal statutes, that public justice is not served by the trial and sentencing of a defendant who because of mental disease or defect lacks the capacity to understand the proceedings against him or to assist in his own defense. *McEachern*, supra at 837; § 552.020.1. Whether or not raised by defense counsel or the prosecutor, and where there is reasonable cause for the court to believe the defendant is not competent to stand trial, "Its sole function is to decided whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency. At any time [prior to sentencing] that such evidence appears, the trial court *sua sponte* must order [an exam and then] an evidentiary hearing on the competency issue." *Speedy v. Wyrick*, 702 F.2d 723, 725 (8 thCir.1983).

### THE LAW OF MISSOURI

■■■■■ "It is, of course, clear that by 'dictate of the American conscience, long steeped in hallowed traditions of basic fair play and justice, judicial and statutory safeguards have been created to balance the adversary proceeding where it appears that an accused is suffering from a mental disease or defect'." *State v. Vansandts*, 540 S.W.2d 192, 202 (Mo.App.1976) (quoting *Briggs v. State*, 509 S.W.2d 154, 156 (Mo.App.1974)). It is a violation of a defendant's due process right to a fair trial to convict and sentence him while he is legally incompetent. *State v. Moon*, 602 S.W.2d 828, 834 (Mo.App.1980); *Pate v. Robinson*, supra. A person is deemed "not competent to proceed if, as a result of mental disease or defect, he lacks capacity to understand the proceedings against him or to assist in his own defense." *State v. Moon*, 602 S.W.2d at 835; see also §552.020(1) RSMo. The test for competency is "whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." *State v. Vansandts*, 540 S.W.2d at 202.

■■■■■ A person who is mentally incompetent lacks the capacity to protect their own rights. The protection of the incompetent defendant's due process rights is of such primary importance, the responsibility is shared by defense counsel, the prosecutor, and the court. And, in *Moon*, a case similar to the one at bar, the court stated, "the question of the competence of the defendant does not stand alone on this record. The issue of the competence of trial counsel is also present and, if anything, reinforces the due process issue presented by the defendant's questionable mental capacity." *State v. Moon*, 602 S.W.2d at 836. Also, the issue of competence is not waived once trial begins, "a court must confront and determine the issue at whatever stage of the trial it may arise." *State v. Clark*, 546 S.W.2d 455, 468 (Mo.App.1976). If counsel for either side, including defendant's own counsel, fails to bring up the issue of defendant's competence to proceed, and there is reason to question it, the judge has the power, and the duty, to *sua sponte*, order an examination and, if necessary thereafter, order a hearing on the issue. §552.020 (2) RSMo; see also *State v. Vansandts*, supra.

■■■■■ "In order to necessitate a *sua sponte* order for a competency hearing, there must be some information, evidence, or observation that triggers the statutory requirement of 'reasonable cause'." *State v. Tokar*, 918 S.W.2d 753, 763 (Mo. banc 1996). "The suspicion or actual presence of some degree of mental illness or need for treatment is not to be equated with incompetency to stand trial or mental disease and does not require a *sua sponte* hearing ... There must be circumstances or evidence of some mental disease or defect before the court is required to hold a hearing *sua sponte*." *State v. Vansandts*, 540 S.W.2d at 202.

■■■■■ Although no single factor is necessarily determinative, there are several factors which may alert the court of the possibility of defendant's mental incompetency. Factors which imply possible mental incompetency when considered as a whole include:

"(1) prior commitments to mental institutions for evaluations; (2) inappropriate behavior and responses on the witness stand; (3) the bizarre circumstances of the criminal activity in the instant case; (4) the nature of the prior offenses causing the earlier examinations." *State v. Moon*, 602 S.W.2d 828, 835 (Mo.App.1980). In *State v. Wise*, 879 S.W.2d 494, 507 (Mo. banc 1994), the trial court's finding that appellant was mentally competent was upheld, and those findings were based on factors which included expert's reports. Further, the court in *State v. Bryant*, 563 S.W.2d 37, 46 (Mo. banc 1978), stated, "[w]hen a psychiatrist's report shows a diagnosis of some mental defect, it would certainly be prudent for the trial court to set an evidentiary hearing at which the report and any other evidence pertinent to the issue could be placed in evidence and the court would then make its findings as to competency to proceed...." Although there are no "fixed or immutable signs" that always indicate a need for an exam or a hearing, the Court in *Drope* found that some of the most important factors [2] include the defendant's irrational behavior, the defendant's demeanor at trial, and prior medical opinions. *Drope*, 420 U.S. at 180, 95 S.Ct. 896.

### DUTY OF PROSECUTOR

Although not an issue specifically presented to the court in this case, the prosecutor shares with trial counsel and the court, the duty to address the issue of incompetency to stand trial, when reasonable doubt exists. "The principle which will not tolerate conviction of an accused who lacks capacity to consult with counsel and to understand the proceedings rests on values of public conscience—quite apart from considerations of guilt or innocence...." *State v. Clark*, 546 S.W.2d 455, 467–8 (Mo.App.1976). Because of this, "the statute [§552.020] expressly provides that, not only must a trial court, who has reasonable cause to believe the accused suffers from a mental disease or defect which affects his fitness to proceed, order a psychiatric examination and determine that issue ... but allows the prosecutor to share that initiative." *Id.* at 468. "That procedure provides a precaution for the integrity of the criminal proceedings...." *Id.* According to Missouri's Code of Professional Responsibility, Rule 4, EC—13, " 'The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict....' " *State v. Beishir*, 522 S.W.2d 761, 772 (Mo. banc 1975). In the case at bar, the prosecutor admitted that he was aware of the defendant's problems, but did not insure that he was competent to stand trial. When the court asked whether Tilden had been subjected to a Section 552 examination, the prosecutor replied that he had, although no such examination had ever been administered. " '[O]ne cannot fault a trial court judge for failing to determine a question that he/she has no reason to believe is in issue'." *State v. Tokar*, 918 S.W.2d at 763. Often, "judges must depend to some extent on counsel to bring the issues into focus." *Id.* at 764 (quoting *Drope*, 420 U.S. at 176–7, 95 S.Ct. 896).

2. For other factors favoring ordering an exam, or then possibly, a hearing see: Morris v. United States, 414 F.2d 258, 259 (9th Cir.1969)(prior findings of psychotic conditions as contained in a pre-sentence investigation); usually the opinion of an expert of incompetency is sufficient to warrant ordering an exam, and the report of a Section 552.020 qualified examiner sufficient to hold an evidentiary hearing; State v. Moon, 602 S.W.2d 828 (Mo.App.1980)(where defendant committed to state hospital for exam in connection with other charges, previous stays in mental hospitals and earlier arrest for indecent exposure, a sua sponte hearing should have been ordered); Drope, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), U.S. v. Mason, 52 F.3d 1286, 1292 (4thCir.1995)(suicide attempts when considered with other evidence of incompetence); Tiller v. Esposito, 911 F.2d 575, 578 (11th Cir.1990)(trial judge's doubts raised by defendant's demeanor, on date of sentencing, trial judge sent letter to Corrections urging a review of defendant's condition and sent him to the criminal section of a state hospital); Reynolds v. Norris, 86 F.3d 796, 800 (8th Cir.1996)(concerns by defense counsel expressed to the court by motion or otherwise as to the mental competency of the client, although counsel's concerns, alone, may not establish reasonable cause as to doubt competency); United States v. Johns, 728 F.2d 953, 957 (7th Cir.1994)(nonresponsive and inconsistent statements); Sisco v. Buford, 559 S.W.2d 747 748–9 (Mo. banc 1978)(where defendant had amnesia due to the equivalent of a prefrontal lobotomy and could not aid counsel but did understand the proceedings, the Court prohibited the trial).

### DECISION

■ Recognizing there is no "easy litmus test" nor are there "fixed or immutable signs" for determining when the evidence meets the deceptively simple "reasonable cause" standard for ordering a mental competency exam, or "further inquiry," this court, under this record, rules there was clearly demonstrated a need for an exam of Tilden pursuant to Section 552.020.2 and .3. *Drope*, 420 U.S. at 180, 95 S.Ct. 896; *Pipken v. State*, 671 S.W.2d 626, 629 (Tex.App.1984). The failure of the trial court, *sua sponte* to order this exam prior to imposition of sentence violated the defendant's procedural rights of due process. Well prior to this court's order for an exam, and the subsequent stipulation that the defendant was incompetent during the appeal process, the evidence of Tilden's extensive and serious problems raised a reasonable cause to believe he lacked the competency to proceed. The post-sentencing order and stipulation that the defendant was incompetent during this appeal process and needed a guardian to aid him in decisions on appeal, does nothing more than bolster the ruling that a mental exam was mandated prior to sentencing, and the failure to do so is a constitutional violation requiring the judgment be reversed. *U.S. v. Polisi*, 514 F.2d 977 (2d Cir.1975). As an aside, even if the PSI information which was gathered on Tilden's history and background, had contained a report from a person *recognized* under Section 552.020.2 to conduct an exam and make a report, unless such report met the requirements of Section 552.020.3, it would not satisfy the requirement that the mandatory exam had been made. *Id.* at 979–80. Specifically, the statute "requires that the report of the psychiatric examination contain an opinion as to whether the defendant is competent to proceed." *Bryant v. State*, 563 S.W.2d at 42. None of the reports contained in the PSI

ever addressed or answered this all-important question.[3]

Prior to sentencing, the judge had well-founded concerns about Tilden's competency. A combination of factors, including a partial lobotomy, self-mutilating behavior, alcohol abuse, extensive criminal activity, extensive mental health treatment and observation dating back to childhood and continuing just after his arrest, being disabled for social security purposes, and having his wheel-chair bound mother manage this thirty-something year-old's affairs, formed a sufficient basis to have ordered an examination of his competency to stand trial. The fact that the trial court was erroneously led to believe a report comporting with the requirements of 552.020.3 had been rendered and submitted, does not change the result here, or satisfy the constitutional requirement. If the trial court *sua sponte* ordered an exam but it was never filed, and the case proceeded on to trial and judgment, and even if counsel on both sides failed to so note the absence of a report, the result would have to be the same, a new trial. *Brown v. State*, 871 S.W.2d 852, 859–60 (Tex.App.1994).

■ The fact that Tilden exhibited no bizarre behavior at trial and trial counsel did not motion the court that Tilden was incapable of helping with the defense, are not dispositive of the issue. On these facts, Tilden still had a constitutional right to an exam and, then if necessary, a hearing as to his competency to understand the proceedings. Regarding the Rule 29.15 claim against trial counsel, counsel can be deemed ineffective for not pursuing a mental exam or then a hearing. It must be shown there is reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Howard v. State*, 698 S.W.2d 23, 25 (Mo.App.1985). There was a factual basis here, which should have

3. The court makes an additional observation to, and recommendation for examination by the legislature: § 552.020.6 states that once a § 552.020.2 report of examination is received by the circuit clerk's office, "The report shall not be made a public record or open to the public." Subsection .13 flatly states, "The result of any examinations made pursuant to this section shall not be made a public record or open to the public." Even though none of the examinations in the case at bar may be technically measured as § 552.020 reports, the court is concerned with the effect of the above-quoted statutory language and the effect on disclosure of reports or results in trial court findings in a Rule 29.15 case, or disclosure by an appellate court via a direct appeal or an appeal of denial of a post-conviction remedy.

caused counsel to seek a mental examination for his client, under Section 552.020, prior to sentencing. However, this claim is mooted by the ultimate holding in this case that the trial court failed to order a mental exam. *Tiller v. Esposito*, 911 F.2d 575–6 & n. 2 (11th Cir.1990).

"This case may be classified as one of the exceptions referred to in the observation that 'the requirement that the court must act *sua sponte* to hold a hearing ought to remain the exception rather than the rule'." *State v. Moon*, 602 S.W.2d at 836. "[T]he trial court should have been alerted to a possible lack of competency to stand trial in light of all the facts." *Id.* at 835. The trial court noted its concern regarding Tilden's mental and psychological deficiencies, but proceeded, presumably, based on the misconception that Tilden's competency to stand trial had been examined according to Section 552.020. Regardless, under these facts, an exam was mandated; the trial should have been delayed until the panoply of determinations were made according to the dictates of the statute. By this decision, the court does not mean to promote the filing of non-meritorious motions for examination or competency hearings. It does reinforce the necessity of vigilance by both court and counsel on this constitutional matter.

### REMEDY

■ The question of what is the proper remedy available to this defendant is made somewhat easier to answer since *after* the filing of the appeal both prosecutor and defense counsel stipulated Tilden is incompetent. As stated earlier, the situation in this case is most unusual—this court does not comment in this opinion as to the pursuing of a competency determination post-sentencing and judgment. Since the state has stipulated, post-conviction, Tilden is mentally incompetent to understand the appeal, the state cannot now logically persuade an appellate court to merely remand for a retroactive exam and a hearing to determine if Tilden was competent at trial. *U.S. v. McEachern*, 465 F.2d 833, 839 (5thCir.1972). It is hard to believe that, with all the evidence of mental problems at trial, Tilden suddenly, in mid-1998, lost his ability to understand the intricacies of the criminal justice system. Right now, Tilden is deemed incompetent. He did not have an exam (nor hearing) prior to judgment and sentencing, even though there was more than sufficient evidence to raise a reasonable doubt. For this constitutional violation, the judgment is reversed and remanded for a new trial. However, a new trial cannot be ordered until the statutory requirements of Section 552.020 are met and it is determined Tilden is competent to proceed. *Drope*, 420 U.S. at 183, 95 S.Ct. 896.

Since Tilden is in a Department of Corrections facility, albeit receiving mental health treatment, the statute mandates he be in the custody of the director of mental health. This court's mandate is that Tilden be immediately transferred to the director of mental health under Section 552.020.9 et. seq.

Though not necessary to this opinion, the court adds that even if there had been no stipulation in this court of mental incompetency, the result would have been the same in that too much time has elapsed since sentencing to send the matter back for examination and hearing, to decide retroactively, the matter of competency at time of trial. As stated in *Drope*, 420 U.S. at 181–83, 95 S.Ct. 896, "the correct course was to suspend the trial until such an evaluation could be made," however, retrospective hearing determinations are inadequate given "inherent difficulties" present even under favorable circumstances. *Pate v. Robinson, supra*, 383 U.S. at 387, 86 S.Ct. 836; *Dusky, supra*, 362 U.S. at 402–3, 80 S.Ct. 788; *Griffin v. Lockhart*, 935 F.2d 926, 931 (8th Cir.1991). Even though some jurisdictions and federal law permit limited retrospective determinations of competency without outright reversal and the ordering of a new trial, courts have said that there must be evidence that a "meaningful hearing remains possible," for allowance of a post-conviction competency hearing to be proper. *Reynolds v. Norris, supra*, 86 F.3d at 802. A meaningful hearing is possible when there is additional relevant evidence which permits an accurate assessment of the defendant's condition at the time of trial. *Id.* Where the constitutional rights of the defendant may be in jeopardy, the Missouri Stat-

utes provide an orderly schedule, without implicating double jeopardy considerations, to stop the proceedings and get a detailed report or reports from trained mental health professionals on the defendant's current ability to comprehend the proceedings and help with the defense. It is far better, where years have passed since the trial, to order a new trial rather than to determine on appeal, the competence of the defendant back at the time of trial. Imposition of this remedy of reversal, and a remand for trial, while not totally satisfactory in that it may put the state, the witnesses and the victim through another trial, is far superior to overlooking the need to have had an exam and hearing while the case was pending, which was a violation of the right of due process. The unfortunate fact that everyone may have to go through another trial, merely reinforces the importance of establishing the defendant's competency to stand trial at the time of trial, before sentencing. Albeit, there will be few cases in the criminal justice system where a defendant may make a Section 552.020 case, but it is better to be vigilant at trial and make any determination as to trial competency at trial rather than later.

The judgment of conviction is reversed and the case is remanded. The defendant is ordered transferred immediately from the Department of Corrections to the custody of the Director of Mental Health. Neither a new trial nor plea of guilty shall be had unless and until such time as the provisions of Section 552.020.10 and .11 have been complied with and the defendant has been determined mentally competent to proceed. *Morris v. U.S.*, 414 F.2d 258, 259 (9 th Cir.1969).

All Concur.