Lisa P. Page, Presiding Judge
David Hygrade ("Defendant") appeals his conviction for two counts of unlawful possession of a firearm, in violation of Section 571.070 RSMo Cum Sup. 2010. Defendant claims the trial court: (1) plainly erred in failing to sua sponte order a mental examination of Defendant; (2) erred in overruling his objection to the State's questioning during voir dire ; and (3) erred in overruling Defendant's motions for judgment of acquittal and for new trial because there was insufficient evidence to support his conviction. For reasons set forth below, we find no error and affirm the judgment of conviction.
BACKGROUND
On September 1, 2015, Officer Jennifer Nemeth and her partner Officer David Wilson responded to a call of shots fired at *61 a residence. They arrived in a marked police vehicle wearing uniforms. Officer Nemeth observed five people on the front porch, including Defendant, who went into the house. According to Officer Nemeth, Defendant was holding his right arm against his right side, and she observed a bulge under his clothing. Detective James Bain also responded to the residence to assist Officers Nemeth and Wilson. He observed Defendant leave the porch and go into the residence. Detective Bain also noted something bulging through Defendant's shirt, which he believed to be a firearm because he could see the butt of the gun. Detective Bain received permission from the homeowner to enter the residence. The homeowner informed Detective Bain she did have a small firearm in a locked bedroom in her residence. He went into the basement where he found Defendant in a closet under the stairs. Defendant exited the closet with his hands up. Detective Bain observed dust on Defendant's face, shirt, and hands. He also noticed the butt of a gun inside the drop ceiling tile inside that closet. He ultimately retrieved two firearms, a semiautomatic rifle and a 9mm handgun, from the ceiling and neither matched homeowner's description of a "small firearm."
Defendant was placed under arrest and charged with two counts of unlawful possession of a firearm. A jury convicted him of both counts, and Defendant was sentenced to fifteen years' imprisonment for each count, the sentences to be served concurrently. The present appeal followed.
DISCUSSION
Point I-The trial court did not err in failing to order a competency examination, sua sponte
In his first point on appeal, Defendant alleges the trial court erred in failing to sua sponte order a competency examination of Defendant after reviewing the Sentencing Assessment Report ("SAR"). According to Defendant, several factors were present in the SAR to give the trial court reasonable cause to question Defendant's competency to stand trial. We disagree.
Standard of Review
Defendant did not raise the issue of his competency prior to trial or sentencing. Defendant did not challenge the trial court's failure to order an examination in his motions for judgment of acquittal at the close of State's evidence, the close of all evidence, nor in his motion for new trial. Thus, the issue has not been preserved for appeal and we review his claim for plain error. Pursuant to Missouri Supreme Court Rule 30.20, we will review for plain error if we find that manifest injustice or a miscarriage of justice has resulted from the alleged error. See Holman v. State , 88 S.W.3d 105, 110 (Mo. App. E.D. 2002) (trial court's failure to sua sponte order mental examination would be reviewed for plain error). However, Defendant contends this issue does not "fall into one neat category of standard of review." In support of his claim, Defendant cites to State v. Tilden , 988 S.W.2d 568, 576 (Mo. App. W.D. 1999), arguing the court in Tilden set forth a different standard of review for an unpreserved allegation of error that the trial court failed to sua sponte order a competency exam. We disagree.
In Tilden , as in the present case, the issue of competency was not raised. Id. at 576. Defendant claims the court applied a different standard of review than plain error. Not so. The court merely began its thorough analysis with the general legal standard under which we review the trial court's duty to order an examination of a defendant when the issue is raised by motion and preserved for review-specifically, whether or not the trial court's determination *62 of competency was supported by substantial evidence. Id. However, the court then very clearly distinguished the different, and more difficult, procedural posture presented in Tilden's appeal where a determination of competency was not requested and/or denied, nor was a hearing denied after an examination was conducted. Id. Instead, as here, the Tilden court was required to effectively review a "non-decision" of the defendant's competency. Id. In doing so, the court held if a trial court is presented with sufficient facts to form reasonable cause to question a defendant's competency, then the court must order a mental examination of the defendant. Id.
Nevertheless, this decision does not change the fact we review only for plain error when error is unpreserved at the trial court level. Holman , 88 S.W.3d at 110. Rule 30.20. Moreover, Rule 30.20 provides the authority for this plain error review only to determine whether manifest injustice or a miscarriage of justice would result if the unpreserved error is left uncorrected. The Tilden court concluded that several critical factors were before the trial court which gave rise to well-founded concerns regarding Tilden's competency, and the failure of the trial court to sua sponte order an examination violated Tilden's right to due process. Id. at 579. Here, unlike Tilden , no such manifest injustice or miscarriage of justice occurred.
Analysis
The Fifth Amendment to the United States Constitution provides that no one shall be "deprived of life, liberty or property without due process of law." It is a violation of the due process guarantee to convict and sentence a defendant who is not competent to stand trial. State v. Tokar , 918 S.W.2d 753, 762 (Mo. banc 1996) (internal citations omitted). A defendant is competent to stand trial if he has sufficient ability to consult with his lawyer and has a rational and factual understanding of the proceedings against him. Id. In addition, Section 552.020.2 RSMo Cum. Sup. 2011, requires a judge to sua sponte order a mental examination of the defendant if he or she has reasonable cause to believe the defendant lacks the mental capacity to proceed. However, to necessitate a sua sponte order of an examination, there must be some information, evidence, or observation to trigger the statutory requirement of "reasonable cause." Holman , 88 S.W.3d at 110-11. We must determine whether a reasonable judge, in the same situation as the trial court in the present case, would have had doubts regarding Defendant's competence. Tokar , 918 S.W.2d at 762-63 (internal citation omitted). Trial courts are vested with broad discretion in this regard, and we will not find fault with the trial court's failure to determine a question of competency where he or she has no reason to believe there is an issue. Holman at 111 ; Tokar , 918 S.W.2d at 763 (quoting Davis v. Alabama , 545 F.2d 460, 464 (5th Cir. 1977), cert denied , 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977) ).
No single factor is determinative, however, there are several factors which may be considered to provide the trial court with reasonable cause to question a defendant's mental capacity. These include: (1) prior commitments to mental institutions for evaluation; (2) inappropriate behavior on the witness stand or in appropriate responses; (3) bizarre circumstances surrounding the alleged criminal activity in the case; and (4) the nature of prior offenses causing earlier examinations. Tilden , 988 S.W.2d at 577-78. While these particular factors were not determinative in the instant case, Defendant claims several facts included in the SAR resulted in reasonable cause to trigger the *63 trial court's independent duty to order a mental exam. Defendant specifically points to the facts that his full scale IQ score is 59, he was diagnosed with intellectual disabilities,[1] he received Social Security disability, he read at a third-grade level at age 29, and he was held in a medical center for federal prisoners when he was federally incarcerated. While Defendant's intellectual abilities were reported as low functioning, in light of the record as a whole, we do not believe these factors were sufficient to give the trial court reasonable cause to believe Defendant lacked capacity.
Additionally, the SAR reflected that Defendant had a significant criminal history, including eleven offenses between 2005 and 2009. Several of Defendant's prior offenses resulted in incarceration or probation, and nothing in the record indicates Defendant's competency was questioned by any counsel or judge involved in each prior proceeding. In addition, although Defendant did not testify at trial, he was present in court, and the trial court had the opportunity to observe his behavior and interaction with counsel. See State v. Hughes , 908 S.W.2d 804, 806-807 (Mo. App. E.D. 1995) (diagnoses of intellectual disability did not require court to order mental exam sua sponte where court had opportunity to observe the defendant). Defendant also answered the trial court's questions under oath following sentencing indicating his understanding of the proceedings, as well as his ability to participate with counsel and his satisfaction with his representation.
As a result of the foregoing, we cannot conclude a reasonable judge, faced with the same information as the trial court in the present case, should have experienced doubt as to Defendant's competence. When considered in light of the circumstances in their entirety, the factors Defendant points out in the SAR do not rise to the level of reasonable to cause to require the trial court to order a mental exam on its own motion. Thus, the trial court did not err, plainly or otherwise, in failing to sua sponte order a mental examination of Defendant.
Point I on appeal is denied.
Point II-No error overruling objection to voir dire questioning
In his second point on appeal, Defendant claims the trial court erred in overruling counsel's objection to the State's questioning during voir dire. Defendant argues the State's questioning concerning information regarding his prior felony conviction was an improper reference to Defendant's decision to exercise his constitutional right not to testify at trial. Defendant's argument is without merit.
Standard of Review
The trial court is granted wide discretion with respect to the propriety of voir dire questions. State v. Ezell , 233 S.W.3d 251, 253 (Mo. App. W.D. 2007). Therefore, we review the trial court's decision in this regard only for abuse of discretion, and the questions at issue must be considered in context. Id.
Analysis
Defendant was charged with possession of a firearm under Section 571.070 RSMo Cum. Sup. 2010, which states a person commits the offense of possession of a firearm if he knowingly possesses a firearm and has been convicted of a felony. The parties in this case stipulated to the fact that Defendant was previously convicted of a felony. During voir dire , the prosecutor informed the venire panel it is *64 a crime to possess a firearm if the person has been convicted of a felony. The prosecutor then informed the panel they would not know what felony Defendant had been previously convicted of and appropriately inquired if they would be able to consider a guilty verdict without that specific information. Counsel for Defendant objected to the question as an indirect comment on Defendant's right not to testify.
It is a well-established rule of evidence that prior criminal acts of a defendant are not admissible unless they tend to directly establish the defendant's guilt of the charge for which is being tried. State v. Moore , 352 S.W.3d 392, 401-02 (Mo. App. E.D. 2011). There are exceptions to this rule, including when the evidence of prior criminal acts is admissible to rebut a defendant's own assertions from the stand that he has not been guilty of misconduct. Id. at 402. However, such impeachment evidence is only potentially admissible if the defendant testifies.
Defendant correctly asserts that under the Fifth Amendment of the United States Constitution and Article I, Section 18 of the Missouri Constitution, criminal defendants are afforded the right not to testify on their own behalf. See also Section 546.270 RSMo (2000), and Missouri Supreme Court Rule 27.05(a). Both parties are forbidden from commenting about a defendant's exercise of that right. State v. Barnum , 14 S.W.3d 587, 591 (Mo. banc 2000). It is error to allude, directly or indirectly, to a defendant's failure to testify on his own behalf. Id. at 592. If the reference to the defendant's failure to testify is considered indirect, as in the present case, it will only be erroneous if it is made with a calculated intent to magnify the defendant's decision not to testify and to call the jury's attention to that decision. State v. Stites , 266 S.W.3d 261, 269 (Mo. App. S.D. 2008) (internal citations omitted). The reference must also be considered in context. Id.
Defendant's counsel objected to the voir dire questioning as an indirect reference to Defendant's right not to testify. The court concluded it did not believe a lay person would have sufficient legal knowledge to understand the implication of the question in the context of an evidentiary rule related to the impeachment admissibility of Defendant's prior conviction. We agree.
Here, the State accurately informed the venire panel it would not be told what felony Defendant had been previously convicted of, and continued with questions designed to explore any bias this might elicit from members of the venire panel by asking if the potential jurors would still be able to consider a guilty verdict in the instant case without this information. The questioning did not directly refer to Defendant's failure to testify. Whether a particular comment or question during voir dire is improper must be considered within the discretion of the trial court. Ezell , 233 S.W.3d at 253. We believe it was well within the trial court's discretion to determine this indirect reference was to an evidentiary rule a lay person would not necessarily be familiar with, and did not serve to magnify Defendant's decision not to testify. Thus, the court did not err in overruling Defendant's objection during voir dire.
Point II on appeal is denied.
Point III-There was sufficient evidence to support Defendant's conviction
In Defendant's third and final point on appeal, he claims the trial court erred entering the judgment and sentence upon his conviction of two counts of unlawful possession of a firearm because there was insufficient evidence to support his conviction. According to Defendant, the evidence *65 that he knowingly possessed the firearms was based on speculation and unreasonable inferences, and therefore, insufficient to support his conviction. We disagree.
Standard of Review
We review a challenge to the sufficiency of the evidence to determine whether there was sufficient evidence from which a reasonable juror could have found Defendant guilty beyond a reasonable doubt. State v. Evans , 410 S.W.3d 258, 261 (Mo. App. W.D. 2013) (internal citations omitted). We accept all evidence favorable to the State as true, including all favorable inferences drawn from the evidence. Id. We disregard the evidence and inferences to the contrary. Id. If after reviewing the evidence in the light most favorable to the State, a rational juror could have found the essential elements of the crime charged beyond a reasonable doubt, we will conclude there was sufficient evidence to support Defendant's conviction.
Analysis
A jury found Defendant guilty of two counts of unlawful possession of a firearm, in violation of Section 571.070. In relevant part, Section 571.070 states a person commits the crime of unlawful possession of a firearm if he knowingly possesses a firearm and has been convicted of a felony. Defendant claims there was insufficient evidence to find he "knowingly" possessed the firearms beyond a reasonable doubt. This claim is without merit.
To determine whether the circumstantial evidence sufficiently supports an inference of knowledge, we must look at the totality of the circumstances. Evans , 410 S.W.3d at 263. In the present case, there was significant testimony presented at trial from which a rational juror could have inferred Defendant's knowing possession of the firearms beyond a reasonable doubt.
On September 1, 2015, Officer Jennifer Nemeth and her partner Officer David Wilson responded to a call of shots fired at a residence. They arrived in a marked police vehicle wearing uniforms. Officer Nemeth testified she observed five people on the front porch. When they arrived, she saw a person she identified as Defendant go into the house. She testified Defendant was holding his right arm against his right side, and she observed a bulge under his clothing. Officer Nemeth testified in her experience and training this was consistent with individuals possessing with firearms.
Detective James Bain also testified at trial. He responded to the residence to assist Officers Nemeth and Wilson. He also observed Defendant leave the porch and go into the residence. He observed something protruding through Defendant's shirt, which he believed to be a firearm because he testified he could see the butt of the gun sticking through Defendant's shirt. Detective Bain received permission from the homeowner to enter the residence. The homeowner informed the Detective she did have a small firearm in a locked bedroom in her residence. He went into the basement where he found Defendant in a closet under the stairs. Defendant exited the closet with his hands up, and Detective Bain observed dust on Defendant's face, shirt, and hands. Detective Bain noticed the butt of a gun inside the drop ceiling tile inside the closet. He retrieved two firearms, a semiautomatic rifle and a 9mm handgun, from the ceiling and neither matched homeowner's description of a "small firearm."
Defendant was observed leaving the front porch of the residence where officers were called because of a report of shots fired. The officers testified they observed body movement and a bulge in Defendant's *66 shirt consistent with the presence of a firearm. Defendant was ultimately found in that closet where the firearms were found in the ceiling behind a drop ceiling tile that had been moved. Defendant also had dust consistent with the ceiling tiles on his hands, face, and shirt. Based upon this evidence, and the totality of the circumstances, it is clear a rational juror could have found Defendant's knowing possession of the two firearms beyond a reasonable doubt. Thus, the trial court did not err entering judgment and sentence upon the jury's verdict.
Point III on appeal is denied.
CONCLUSION
The judgment of the trial court is affirmed.
Roy L. Richter, J. and Philip M. Hess, J., concur.

Improperly characterized as mild mental retardation in the SAR.